# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-80019-DMM

PAUL HONIG, CARLA HONIG,
DAVID LIPPMAN, CAROLYN
LIPPMAN, JOHN HERTVIK, and
GERALD ROY, and HERMANT NANAVATY
on behalf of themselves and a class of all others
similarly situated,

    Plaintiffs,

v.

BARRY M. KORNFELD,
FERNE E. KORNFELD,
FIRST FINANCIAL TAX GROUP, INC.,
and FEK ENTERPRISES, INC., et al.

    Defendants.

### DEFENDANTS BARRY M. KORNFELD, FERNE E. KORNFELD, FIRST FINANCIAL TAX GROUP, INC., AND FEK ENTERPRISES, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants Barry M. Kornfeld (**"Mr. Kornfeld"**), Ferne E. Kornfeld (**"Ms. Kornfeld"**), First Financial Tax Group, Inc.[1] (**"First Financial"**), and FEK Enterprises, Inc. (**"FEK"**) (collectively, **"Kornfeld Defendants"**), by and through their undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (**"Rule(s)"**), and Southern District of Florida Local Rule 7.1, hereby move for an order dismissing Plaintiffs Paul Honig, Carla Honig, David Lippman, Carolyn Lippman, John Hertvik, and Gerald Roy's (collectively, **"Plaintiffs"**) First Amended Class Action Complaint and Demand for Jury Trial (**"FAC"**) (Docket Entry

---

[1] While named as a Defendant, First Financial filed a voluntary dissolution through Articles of Dissolution filed with the State of Florida on or about September 26, 2012. On or about September 20, 2012, Defendant FEK filed an Application for Fictitious Name Filing with the State of Florida, and, thereafter, FEK utilized the fictitious name "First Financial Tax Group."

("**D.E.**") 6). In furtherance of the same, the Kornfeld Defendants and Corporate Defendants respectfully state as follows:

## I. INTRODUCTION

Plaintiffs' filed their FAC on or about January 26, 2018, alleging severn causes of action against the Kornfeld Defendants for (1) negligence (Count I); (2) negligent misrepresentations (Count IV); (3) breach of fiduciary duty (Count VII); (4) aiding and abetting breach of fiduciary duty (Count X); (5) sale of unregistered securities in violation of Chapter 517, Florida Statutes (Count XI); and (6) civil conspiracy (Count XIII); and (7) vicarious liability against First Financial and FEK (Count XIV). *See* FAC at ¶¶144-147, ¶¶156-160, ¶¶171-175, ¶¶186-203, and ¶¶214-244. In addition to the Kornfeld Defendants, the FAC also names 36 other unrelated defendants. *Id*. at ¶¶23-57. Plaintiffs' FAC originates from an alleged Ponzi scheme perpetrated by Robert H. Shapiro ("**Shapiro**") and loans Plaintiffs made to Shapiro's company, Woodbridge Group of Companies, LLC ("**Woodbridge**"). In support of their claims, the FAC specifically states "[t]here is a related action pending in the United States District Court for the Southern District of Florida styled *SEC v. Robert H Shapiro, Woodbridge Group of Companies, LLC, et al.,* No. 17-24624 (S.D. Fla.) (the **"SEC Action"**). *Id.* at ¶ 11.

By piggybacking allegations in the SEC Action, Plaintiffs allege "Woodbridge raised more than $1.22 billion from over 8,400 investors nationwide," "Shapiro was the sole owner, and maintained exclusive operational control over Woodbridge and each of its entities," and from "July 2012 through at least December 4, 2017, Shapiro orchestrated a Ponzi scheme using Woodbridge entities." *Id.* at ¶¶ 72-28. Plaintiffs further allege Woodbridge sold promissory notes, known as First Position Commercial Mortgages ("FPCM"), that paid a five percent (5%) to eight percent (8%) annual return and had a term of 12 to 18 months, and also sold seven

different private placement fund offerings ("Fund Offerings") with five-year terms that paid a six percent (6%) to ten percent (10%) annual return. *Id.* at ¶ 73. Additionally, the FAC alleges the "revenue source enabling Woodbridge to pay returns to investors was the interest a Woodbridge affiliate would be receiving on loans to third-party owners of commercial real estate, and "Woodbridge represented to investors that its affiliate would pool money from many investors and lend it to a third-party borrower for a short term, and for only about two-thirds of the value of the real estate securing the transaction, thereby ensuring that the 'properties that secure the mortgages are worth considerably more than the loans themselves at closing.'" *Id.* at ¶ 76. Because Woodbridge provided hard money loans to third-party borrowers, Woodbridge represented FPCM "returns would be derived from those interest payments," and advised FPCM purchasers "a pro rata first-position 'lien' interest in the underlying properties…." *Id.* at ¶ 91. Despite Woodbridge's representations, Plaintiffs' allege such information was inaccurate.

In order to perpetuate the purported Woodbridge Ponzi scheme, Plaintiffs' allege Shapiro relied on individuals in his direct employ (the **"Woodbridge Insiders"**), including Dayne Roseman (**"Roseman"**) and Nina Pedersen (**"Pedersen"**). The FAC alleges Roseman was Woodbridge's Managing Director and Head of Sales, and Pedersen served as Woodbridge's Comptroller. *Id.* at ¶ 95, ¶ 98. According to Plaintiffs, Shapiro directed Roseman to "withhold material information from investors," and Shapiro "directed Pedersen to "'[write-off]' amounts that were owed by the Woodbridge Investment Companies to Woodbridge or to its predecessor, WSF." *Id.* at ¶ 96, ¶ 100. The FAC further alleges Pedersen "concealed transactions which transferred funds from Woodbridge Investment Companies accounts to Woodbridge's main operating account, leaving the Investment Companies with multimillion-dollar [sic] deficits." Due to Pedersen's conduct, Plaintiffs claim "millions of dollars in investor deposits were

3

misappropriated and improperly commingled to keep the scheme afloat." According to Plaintiffs, Pedersen's conduct "helped Shapiro and Woodbridge's attempts to mislead auditors about Woodbridge's financial condition and use of investor money." *Id.* at ¶ 100.

Despite Plaintiffs' claims that Shapiro and Woodbridge defrauded investors by operating a Ponzi scheme, the FAC offers virtually no substantive allegations as to how the Kornfeld Defendants wrongfully participated in Shapiro and Woodbridge's conduct. Instead, the FAC alleges Mr. Kornfeld "actively promoted the Woodbridge FPCM investments," and he claimed to have a "'specialized knowledge of Co-Lending Opportunities…which are also known as first position commercial mortgage notes (FPCMs).'" *Id.* at ¶ 107. Concerning Ms. Kornfeld, Plaintiffs' offer little information other than alleging she held herself "out to be an 'instructor' of Baby Boomer Retirement Planning courses and Social Security Income Optimization Courses." *Id.* at ¶ 110. According to the FAC, Mr. Kornfeld and Ms. Kornfeld claimed the FPCMs were safe and secure, and the Kornfeld Defendants used the Woodbridge sales script to discuss FPCMs with some of the Plaintiffs. *Id.* at ¶ 110, ¶ 112. However, Plaintiffs do not allege, nor can they, that the Kornfeld Defendants were aware of Shapiro's alleged fraud or any alleged Ponzi scheme.

Plaintiffs also allege Shapiro and Woodbridge made misrepresentations to individuals concerning regulatory proceedings relating to Woodbridge business practices. The FAC alleges "[f]ive states, Texas, Massachusetts, Arizona, Pennsylvania, and Michigan, have issued cease and desist orders against one or more of the Woodbridge entities based on their unregistered sale of securities. Woodbridge nonetheless continued to sell their investment products." *Id.* at ¶ 130. The FAC further contends that Shapiro directed Roseman to withhold such information from investors. *Id* at ¶ 131. However, Plaintiffs' acknowledge Woodbridge concealed any regulatory

issues from the Kornfeld Defendants.  As alleged in the FAC, Woodbridge's internal sales agents "falsely mischaracterized the dispositions of these regulatory actions to external sales agents claiming that the company was exonerated of any wrongdoing when no such determination was actually made." *Id* at ¶ 131.  While Plaintiffs' self-servingly acknowledge some of Shapiro's alleged improper conduct, the FAC fails to mention the lengths Shapiro and Woodbridge went to conceal the alleged Woodbridge Ponzi scheme.  As detailed in the SEC Action Complaint, Shapiro and Roseman discussed how to "manipulate Woodbridge's records to show Woodbridge's supposed 'profits' from certain property development."[2]  *See* SEC Action Complaint at ¶ 128.  The FAC also fails to acknowledge, "Shapiro and RS Trust made every effort to hide the fact that most of the Third-Party Borrowers and owners of the underlying properties were Shapiro and his family." *Id.* at ¶ 132.  Moreover, to deceive the external sales agents, including the Kornfeld Defendants, Shapiro "hired a public relations firm to manipulate search engine results" in order to hide the purported regulatory issues described in the FAC. *Id.* at ¶ 139.  As set forth in more detail herein, each of Plaintiffs' causes of action against the Kornfeld Defendants are fatally deficient and should be dismissed.

II.     **ARGUMENT**

    A.     **Standard of Review**

Under Rule 12(b)(6), a complaint may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is <u>plausible</u> <u>on its</u>

---

[2] As held in *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir.1999), a "district court may take judicial notice of public records and may thus consider them on a motion to dismiss." Moreover, because the SEC Action was filed in the Southern District of Florida, the SEC Action Complaint is a public document, and this Court may consider allegations in the SEC Action Complaint without converting the instant motion into a motion for summary judgment. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53-43 (S.D. Fla. 2006).

5

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960 (2007) (emphasis added). A plaintiff must state allegations that are "entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). For Rule 12(b)(6) purposes, "[a] claim has facial plausibility when the [plaintiff pleads] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (emphasis added). Although the Court must accept all of the Complaint's well-pled factual allegations as true, *Twombly's* pleading standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678. Moreover, "factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. *Id.* (internal citations omitted).

The FAC's purported factual allegations against the Kornfeld Defendants, as detailed above, do not "nudge[] [the] claims . . . across the line from conceivable to plausible." *See Iqbal*, 129 S. Ct. at 1951. In addition, the conclusory allegations (i.e., "factually neutral" allegations that are insufficient to satisfy the pleading requirements under Rule 8(a)) contained within the language purportedly supporting Plaintiffs' causes of action against the Kornfeld Defendants should not be accepted for their truth. *Twombly*, 550 U.S. at 557, n.5; *see also Iqbal*, 129 S. Ct. at 1950. As described more fully herein, Plaintiffs fail to state any claim for which relief may be granted against the Kornfeld Defendants and, as a result, dismissal of the FAC in its entirety against the Kornfeld Defendants is appropriate.

### B. Plaintiffs Fail to State a Claim for Negligence against the Kornfeld Defendants

Plaintiffs Paul Honig, Carla Honig, David Lippman, Carolyn Lippman, John Hertvik purport to allege a claim for negligence against the Kornfeld Defendants. To successfully establish a claim for negligence in Florida, a plaintiff must demonstrate "(1) defendant had a

6

duty towards the plaintiff; (2) defendant breached that duty; (3) defendant's breach was the proximate cause of the plaintiff's injury; and (4) plaintiff's damages resulting from the injury." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla.2003). "The principle of 'duty' ... may arise from four general sources: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Id*. (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 n.2 (Fla. 1992)). Whether a duty exists is a question of law. *See McCain,* 593 So. 2d at 502. However, aside from their recitation of legal conclusions, Plaintiffs fail to allege how the Kornfeld Defendants owed them any duties, nor do Plaintiffs allege how the Kornfeld Defendants purportedly violated any duties owed to Plaintiffs. As such, Plaintiffs have not—and cannot—state a claim for negligence against the Kornfeld Defendants.

### C. Plaintiffs Fail to State a Claim for Negligent Misrepresentation against the Kornfeld Defendants

In addition to negligence, the FAC also alleges a cause of action for negligent misrepresentation against the Kornfeld Defendants. A claim for negligent misrepresentation requires a plaintiff to demonstrate that "(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely ... on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *McGee v. JP Morgan Chase Bank, NA,* 520 Fed. Appx. 829, 831 (11th Cir.2013) (quoting *Simon v. Celebration Co.,* 883 So.2d 826, 832 (Fla. 5th DCA 2004)). In Florida, negligent misrepresentation claims "sound in fraud." *Id*. As such, Plaintiffs must satisfy the heightened pleading requirements of Rule 9(b) for fraud claims. *See SIG, Inc. v. AT & T Digital Life, Inc.*,

7

971 F. Supp. 2d 1178, 1198 (S.D. Fla. 2013).

To satisfy Rule 9(b), Plaintiffs must allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *McGee*, 520 Fed. Appx. at 831 (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir.2011)). In the instant matter, Plaintiffs failed to satisfy the heightened pleading standard required by Rule 9(b) to establish a negligent misrepresentation claim; i.e. what statements were made and to whom, when such statements were made, how such statements misled Plaintiffs, and what the Kornfeld Defendants obtained as a result of the alleged fraud. As such, Plaintiffs' negligent misrepresentation claim against the Kornfeld Defendants must be dismissed.

> **D.     Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty against the Kornfeld Defendants**

To adequately allege a claim for breach of fiduciary duty in Florida, Plaintiffs must establish: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause. *See Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla.2002). "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009). "In an arms-length transaction, however, there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." *Id*. (citing *Watkins v. NCNB Nat'l Bank, N.A.*, 622 So .2d 1063, 1065 (Fla. 3d DCA 1993)). Furthermore, "[F]acts supporting a claim of fiduciary duty must be pled with

8

particularity." *Sussman, v. Weintraub*, 2007 WL 908280 at *4 (S.D. Fla. 2007) (citing Parker v. Gordon, 442 So.2d 273, 275 (Fla. 4th DCA 1983) ("it would be necessary to state with particularity the facts which purportedly created the duty that was breached, so that the court could determine as a matter of law whether there was such a duty")). While Plaintiffs allege the Kornfeld Defendants breached their fiduciary duties to them, Plaintiffs fail to allege how those alleged breaches resulted in damages. Rather, Plaintiffs rely on conclusory allegations and the recitation of elements. Accordingly, Plaintiffs' breach of fiduciary duty claim against the Kornfeld Defendants must be dismissed.

### E. Plaintiffs Fail to State a Claim for Aiding and Abetting Breach of Fiduciary Duty against the Kornfeld Defendants

Plaintiffs' claim that the Kornfeld Defendants aided and abetted Shapiro's breach of fiduciary duty to Plaintiffs. To establish a claim for aiding and abetting breach of fiduciary duty in Florida, Plaintiffs must establish "(1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of the breach by the alleged aider and abettor, and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991); *See also Lawrence v. Bank of America, N.A.*, 455 Fed. Appx. 904, 907 (11th Cir. 2012) (Plaintiffs must allege "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor.").

To support their claims for aiding and abetting breach of fiduciary duty, Plaintiffs' allege that "Shapiro maintained complete or substantially complete control over the Woodbridge group of companies and each of the Woodbridge investment funds," and a result of his "controlling positions, actions, and direct and indirect representations to Plaintiffs and class members,

9

Shapiro owed them fiduciary duties of loyalty, care, and to deal honestly and in good faith." *See* FAC at ¶ 44. Plaintiffs' further allege that, "[b]y selling Plaintiffs and class members promissory notes and fund offerings pursuant to false offering materials, and by misappropriating, commingling, and otherwise misusing investor funds, Shapiro breached fiduciary duties he owed to Plaintiffs and class members," and the "[Kornfeld Defendants] substantially assisted in Shapiro's breaches of fiduciary duty with knowledge, general awareness, or recklessness by inducing investors to purchase FPCMs and Fund Offerings. *Id*. However, Plaintiffs fail to allege, nor can they, that the Kornfeld Defendants had actual knowledge of Shapiro's alleged breach of fiduciary duty. Because Plaintiffs cannot allege the Kornfeld Defendants had actual knowledge of any underlying breach of fiduciary duty, any claim for aiding and abetting breach of fiduciary duty fails as a matter of law and must be dismissed.

### F. Plaintiffs Fail to State a Cause of Action for the Sale of Unregistered Securities in Violation of Chapter 517, Florida Statutes, against the Kornfeld Defendants

Plaintiffs' allege the Kornfeld Defendants violated Chapter 517, Florida Statutes (the "Florida Securities and Investor Protection Act"), by selling unregistered securities in the State of Florida. Plaintiffs' contend the Kornfeld Defendants violated Section 517.07 of the Florida Securities and Investor Protection Act by selling Florida residents' FPCMs and Fund investments. However, Plaintiffs' acknowledge the Kornfeld Defendants neither recommended, nor sold, Fund investments. *See* FAC at ¶ 146(d); *See also* SEC Action Complaint at ¶ 94. As such, Plaintiffs cannot claim any violation of the Florida Securities and Investor Protection Act by the Kornfeld Defendants pertaining to Woodbridge Fund investments.

The FAC also fails to adequately allege the FPCMs were securities. As established in the seminal case *Reves v. Ernst & Young*, 494 U.S. 56 (1990), a promissory note is not necessarily a

security. As the *Reves* Court observed, the term "note" should not be interpreted, in a literal sense, to mean "any note." *Id.* at 63. Indeed, notes are not "securities" when they are delivered in consumer financing, secure the mortgage to a home, are secured by a lien on a small business some assets of that business, evidence a character loan to a bank customer, are short-term and secured by an assignment of accounts receivable, or simply formalize an open-account debt incurred in the ordinary course of business. *Id.* at 65 (citations omitted). The *Reves* Court further held any note, which bears a strong "family resemblance" to the aforementioned instruments, is not a "security." *Id.*[3]

To determine if a note is a "security," the *Reves* Court stated: "[f]irst, we examine the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it. If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a "security." If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose, on the other hand, the note is less sensibly described as a "security." In the instant matter, Plaintiffs' allege they purchased promissory notes, secured by a lien on the subject property for which Plaintiffs purchased the promissory notes. Thus, Plaintiffs' FPCM purchases to advance a consumer or commercial purpose. As such, Plaintiffs' claim for violations of the Florida Securities and Investor Protection Act fails as a matter of law and must be dismissed.

---

[3] The *Reves* Court established the following four (4) factors to determine strong resemblance: (1) "the motivations that would prompt a reasonable seller and buyer to enter into" the instrument; (2) the "plan of distribution of the instrument;" (3) "the reasonable expectations of the investing public;" and (4) "whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." *Id.*, at 66-67.

### G. Plaintiffs Fail to State a Cause of Action for Civil Conspiracy against the Kornfeld Defendants

In one of its most far-reaching claims, the FAC alleges the Kornfeld Defendants, and all other defendants, engaged in a civil conspiracy with Shapiro and Woodbridge against Plaintiffs. To state a claim for civil conspiracy in Florida, a plaintiff must allege: plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Phillip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015) (citing *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3rd DCA 1997)). "To allege conspiracy, Plaintiff must allege particularized facts that are more than vague or conclusory." *Whitney Nat. Bank v. SDC Cmtys., Inc.*, 2010 WL 1270264, at *4 (M.D. Fla. 2010). Moreover, a civil conspiracy claim is not an independent cause of action. *Behrman v. Allstate Life Ins. Co.*, 178 Fed. Appx. 862, 863 (11th Cir. 2006).

The FAC alleges, "Shapiro and the other Woodbridge insiders knew the continuous infusion of new funds from investors was critical to keeping the fraudulent scheme afloat. Shapiro and the other Woodbridge insiders also knew that the scheme's success depended upon engaging an external auditor who would assist Shapiro and Woodbridge in perpetrating the Ponzi scheme and defrauding investors, or at the very least turn a blind eye towards the scheme." The FAC further states, "Shapiro, Roseman and the other Woodbridge insiders thus launched a conspiracy to recruit and compensate a network of several hundred external sales agents to solicit the purchase and sale of Woodbridge Investments from the investing public, including the Plaintiffs." *See* FAC at ¶¶216-217. As such, Plaintiffs' allege Shapiro and Woodbridge perpetrated a fraud. However, Plaintiffs did not allege fraud in the FAC. Plaintiffs also allege, "[t]he common purpose and design of the conspiracy was to generate substantial wealth and

profits through the sale of Woodbridge Investments by engaging in uniform, widespread misrepresentations, omissions, and breaches of fiduciary duty, to the grave injury of the often elderly and unsophisticated investors." *Id.* at ¶ 218.

With the exception of these conclusory allegations, the FAC fails to establish any agreement between the Kornfeld Defendants and the purported co-conspirators.[4] Instead, Plaintiffs claim the Kornfeld Defendants knew or should have known that recommending FPCMs was unlawful. However, Plaintiffs acknowledge, and the SEC Action Complaint illustrates, Shapiro and Woodbridge concealed any alleged improper activities from the Kornfeld Defendants. Moreover, Plaintiffs fail to establish any agreement to commit an unlawful act. Plaintiffs' allegations that all Sales Agent Defendants conspired with each other is even more problematic. Plaintiffs' allege the Sales Agent Defendants "knew or should have known of each other's existence, role and participation in the conspiracy and their sale of Woodbridge Investments to Plaintiffs and the putative class members through improper and unlawful means." *Id.* at ¶ 222. As such, Plaintiffs have failed to plead, and cannot prove, any agreement by the Kornfeld Defendants to intentionally commit an unlawful act or commit a lawful act by unlawful means, with any of the other alleged co-conspirators.[5] Based on the foregoing, Plaintiffs' civil conspiracy claim must be dismissed.

---

[4] To the extent Plaintiffs allege any negligence based causes of action contributed to any civil conspiracy claims, such causes of action and allegations are insufficient as a matter of law. *See Sonnenreich v. Philip Morris Inc.*, 929 F. Supp. 416, 419 (S.D. Fla. 1996) ("Logic and case law dictate that a conspiracy to commit negligence is a non sequitur.").

[5] Plaintiffs' civil conspiracy claim also fails to allege the Kornfeld Defendants acted with scienter. However, scienter is required to support any claim of civil conspiracy. *See Banco Latino Intern. v. Gomez Lopez*, 95 F. Supp. 2d 1327, 1336 (S.D. Fla. 2000).

13

### H. Plaintiffs Fail to State a Claim for Vicarious Liability against First Financial and FEK

In conclusory fashion, the FAC alleges Defendants First Financial and FEK are vicariously liable to Plaintiffs. Specifically, Plaintiffs' allege, "Defendants Barry and Feme Kornfeld were employed by, an officer of, or affiliated with Defendants First Financial and FEK Enterprises and acting within the course and scope of their actual or apparent agency with First Financial and FEK Enterprises at all times material to this action." *See* FAC at ¶ 229. Plaintiffs further allege, "Defendants First Financial, FEK Enterprises, Knowles Systems, Atlantic, Florida Tax, Retirement Solutions, Paramount, Old Security, Kovack [sic] Securities, HD Vest, William Blair, Prudential Annuities, Lighthouse, Putnam Retail, Shield Financial, PanthRex, and Wieniewitz Wealth are vicariously liable for all damages or relief awarded as a result of the tortious conduct of their respective affiliated Sales Agent Defendants as alleged herein, each of whom were acting within the course and scope of their actual or apparent agency." *Id*. at ¶ 229. Defendants do not allege any additional allegations to establish a cause of action for vicarious liability.

To establish a claim for vicarious liability, Plaintiff must establish the following elements: (1) "the right and ability to supervise," and (2) "a direct financial interest" in the profits from the infringing activity. *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010), aff'd, 425 Fed. Appx. 833 (11th Cir. 2011) (citing *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963)). Moreover, while Plaintiffs allege Mr. Kornfeld and Ms. Kornfeld were acting within the scope of their actual or apparent agency, they do not allege the requisite elements. For liability based upon actual agency, Plaintiffs must satisfy the following elements: (1) the principal acknowledges the agent will act for it; (2) the agent accepted the undertaking; and (3) the principal had control over the

agent's actions.  *See Fojtasek v. NCL (Bahamas) Ltd.*, 613 F.Supp.2d 1351, 1357 (S.D. Fla. 2012).  A claim premised upon an apparent agency relationship requires the following elements: "(1) a representation by the principal to the plaintiff; (2) which causes the plaintiff to reasonably believe the agent is authorized to act on the principal's behalf; and (3) which induced the plaintiff's detrimental and justifiable reliance on the appearance of that agency."  *See Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014).  Plaintiffs allege Mr. Kornfeld and Ms. Kornfeld were acting in the scope of their employment, however they fail to allege anything further, and, as such, Plaintiffs failed to adequately plead a claim for vicarious liability.  Accordingly, Plaintiffs' vicarious liability claim against First Financial and FEK must be dismissed.

### I.     The FAC is a Shotgun Pleading

In addition to warranting dismissal for Plaintiffs' substantive pleading failures and conclusory allegations as set forth above, the FAC is also subject to dismissal as a shotgun pleading.  Shotgun pleadings are disfavored in the Eleventh Circuit.  *See Great Florida Bank v. Countrywide Home Loans, Inc.*, 2011 WL 382588, at *2 (S.D. Fla. 2011).  "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.  Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous."  *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).  The Eleventh Circuit has identified four (4) different types of shotgun pleadings: (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, thereby causing successive counts to carry every count that came before them, resulting in the

15

last count to contain all of the preceding allegations (the most common type); (2) a complaint that contains conclusory, vague, and immaterial facts that are not obviously connected to any particular cause of action; (3) a complaint that does not separate into different counts each cause of action or relief claimed; and (4) asserting multiple claims against multiple defendants without adequately detailing which defendant is responsible for which act or omission, or failing to identify which defendant is the subject of the claim. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

The FAC is a shotgun pleading for several reasons. While the FAC does not adopt and re-allege each of the allegations in each preceding count, Plaintiffs' improperly group Defendants and non-parties together. *See Marrero v. Benitez*, 2017 WL 7796341 at *4 (S.D. Fla. 2017) (Plaintiffs' complaint warranted dismissal as shotgun pleading where, amongst other things, Plaintiffs impermissibly grouped Defendants together).[6] Moreover, the FAC improperly incorporates numerous numbered allegations concerning other Defendants into counts against the Kornfeld Defendants. Finally, the FAC incorporates numerous facts that are conclusory and vague necessitating dismissal. Accordingly, the FAC must be dismissed as a shotgun pleading.

### J. Request for Hearing

The Kornfeld Defendants' respectfully request oral argument on the Kornfeld Defendants' Motion to Dismiss.

## III. CONCLUSION

Plaintiffs have not met the applicable standards required to sustain their claims against

---

[6] While Plaintiffs' improperly group Defendants throughout the FAC, Plaintiffs' aiding and abetting breach of fiduciary duty and civil conspiracy claims warrant dismissal outright as a shotgun pleading. *See, e.g., Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.").

the Kornfeld Defendants, and the FAC must be dismissed as to the Kornfeld Defendants. Plaintiffs do not state a cognizable claim under Federal Rule 12(b)(6), and their causes of action against the Kornfeld Defendants do not meet the applicable pleading requirements, including those claims necessitating a heightened pleading standard under Rule 9(b). Plaintiffs' failure to follow and abide by the required pleading requirements makes this matter ripe for dismissal.

**WHEREFORE**, Defendants Barry M. Kornfeld, Ferne E. Kornfeld, First Financial Tax Group, Inc., and FEK Enterprises, Inc., respectfully request an Order of the Court dismissing Plaintiffs' First Amended Class Action Complaint and Demand for Jury Trial, and for such other relief the Court deems just and proper.

**DATED:**     March 20, 2018
              Coral Gables, Florida

                                        Respectfully submitted,

                                        */s/ Robert C. Harris*
                                        Robert C. Harris, Esquire
                                        Florida Bar No. 26205
                                        Hunter Taubman Fischer & Li LLC
                                        2 Alhambra Plaza, Suite 650
                                        Coral Gables, Florida 33134
                                        Tel:   (561) 430-8260
                                        Fax:   (305) 629-8099
                                        E-mail: rharris@htflawyers.com

## CERTIFICATE OF SERVICE

I, Robert C. Harris, do hereby certify that on March 20, 2018, a true and correct copy of the foregoing document was electronically filed and served.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Robert C. Harris*

Robert C. Harris