UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:18-cv-80019-DMM

PAUL HONIG, CARLA HONIG, DAVID
LIPPMAN, CAROLYN LIPPMAN, JOHN
HERTVIK, GERALD ROY, and HERMANT
NANAVATY on behalf of themselves and a class
Of all others similarly situated,

        Plaintiffs,

vs.

BARRY M. KORNFELD, FERNE E. KORNFELD,
FIRST FINANCIAL TAX GROUP, INC., FEK
ENTERPRISES, INC., LYNETTE M. ROBBINS,
THEODORE LEUTZ, KNOWLES SYSTEMS, INC.,
ALBERT D. KLAGER, MICHELE KLAGER,
ATLANTIC INSURANCE & FINANCIAL SERVICES,
INC., et al.

        Defendants.
_____/

## THE KLAGER DEFENDANTS'
## MOTION TO DISMISS FIRST AMENDED COMPLAINT AND INCORPORATED
## MEMORANDUM OF LAW

Defendants, Albert D. Klager, Michele Klager, and Atlantic Insurance & Financial

Services, Inc., a Florida corporation (the "Klager Defendants"), by and through undersigned

counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 8(a)(2), hereby moves this

Court for an order dismissing Plaintiffs' Paul Honig, Carla Honig, David Lippman, Carolyn

Lippman, John Hertvik, Gerald Roy, and Hermant Nanavaty (the "Plaintiffs") First Amended

Class Action Complaint and Demand for Jury Trial ("FAC") [D.E. 6].  In support of this request,

the Klager Defendants state as follows:

1

1.      On January 26, 2018, the Plaintiffs filed their FAC against the Klager Defendants and thirty-six (36) other unrelated defendants, which seeks to assert the following causes of action against the Klager Defendants:

- Negligence (Count II) [D.E. 6, p. 35];

- Negligent Misrepresentation (Count V) [D.E. 6, p. 39];

- Breach of Fiduciary Duty (Count VIII) [D.E. 6, p. 42];

- Aiding and Abetting Breach of Fiduciary Duty (Count X) [D.E. 6, p. 43];

- Sale of Unregistered Securities in Violation of Chapter 517, Florida Statutes (Count XII) [D.E. 6, p. 47];

- Civil Conspiracy (Count XIII) [D.E. 6, p. 50]; and

- Vicarious Liability (against Atlantic Insurance) (Count XIV) [D.E. 6, p. 53]

2.      The claims asserted in Plaintiffs' FAC arise out of the placement of real estate loans and related products by the Woodbridge Group of Companies, LLC and their affiliated entities to numerous customers across the country.   Plaintiffs' allege that the program was a Ponzi scheme orchestrated by Robert H. Shapiro ("Shapiro"), the   owner and operator of Woodbridge. [D.E. 6, ¶ 1]

3.      Shapiro is currently the defendant in a lawsuit filed against him by the Securities and Exchange Commission ("SEC") arising out of his role with Woodbridge,  styled *SEC v. Robert H Shapiro, Woodbridge Group of Companies*, LLC, et al., No. 17-24624 (S.D. Fla.) (the "SEC Action").  A copy of the Complaint filed by the SEC (the "SEC Complaint") is attached hereto as Exhibit "A".

4.      Plaintiffs' allege that they and other Woodbridge investors were promised that they would be repaid from high interest rates that Shapiro's company was earning on loans to

third-party borrowers, when in fact the purported third-party borrowers were Shapiro-affiliated companies that never paid back any loans. [D.E. 6, ¶ 3]

5.      Plaintiffs set out their allegations by first describing what they characterize as "The Woodbridge Scheme". [D.E. 6, p. 15].   Specifically, Plaintiffs allege that "Shapiro orchestrated a Ponzi scheme using Woodbridge entities" and that "Shapiro was the sole owner, and maintained exclusive operational control over Woodbridge and each of its entities". [D.E. 6 ¶ 73]

6.      Under the "Woodbridge Scheme", Plaintiffs allege that investors were sold unregistered First Position Commercial Mortgage ("FPCM") investments for a twelve (12) to eighteen (18) month term marketed to pay 5% - 8% interest annually on a monthly basis,  and private placement fund offerings investments ("Fund Offerings"), marketed to pay 6% - 10% interest annually on a monthly basis, with a five (5) year term, and an accrued dividend and share of profits at the end of that term. [D.E. 6, ¶¶ 74-75].

7.      The FAC further alleges that "Woodbridge represented to investors" that  the purported source of revenue for the Woodbridge business model was interest that a Woodbridge affiliate would be receiving on loans to third-party owners of commercial real estate [D.E. 6, ¶ 76]; that "Woodbridge told investors" that these third-party borrowers were paying 11- 15% annually for short-term financing [*Id.*, ¶ 77]; and that "Woodbridge told investors" that as an additional source of revenue it would purchase properties to develop and sell for profit. [*Id.*].

8.      The Plaintiffs allege that these representations which "Woodbridge told investors" about the "Woodbridge business model" was a "sham", because the purported third-party borrowers were Shapiro-owned and controlled LLCs with no income, no bank accounts, and

never made any loan payments to Woodbridge, "all facts Woodbridge and Shapiro concealed from investors" [*Id*. ¶  78].

9.      Next, Plaintiffs describe what they characterize as "The Woodbridge Civil Conspiracy", which they claim depended on a sales team of both in-house sales agents and also "external sales agents", to solicit investments from the public for a commission. [D.E. 6, ¶¶ 80; 83].  Plaintiffs do not define which individuals made up this team of "external sales agents".

10.      Plaintiffs allege that "Woodbridge provided the sales agents with uniform, scripted information and sales materials", which Plaintiffs describe as the "Woodbridge sales script", and that all of the information in these materials was false. [D.E. 6, ¶ 85]. Plaintiffs do not define which individuals were amongst this group of "sales agents" who were provided with the "Woodbridge sales script".

11.      In a continued vague and unspecific fashion, Plaintiffs claim that either "Woodbridge" and the (undefined) "sales team", or "Woodbridge" and the (undefined) "sales force", "lied", "concealed" and/or made "false" representations to investors, based on information in "Woodbridge's marketing materials".  [D.E. 6,  ¶¶  87; 88-92].

12.      Plaintiffs then set out the involvement of certain individuals who they characterize as "Woodbridge Insiders" [D.E.  6, p. 19].   Plaintiffs allege that "Shapiro orchestrated and operated the fraud" and that these "Woodbridge Insiders", specifically, Dayne Roseman ("Roseman"), Woodbridge's Managing Director and Head of Sales, and Nina Pederson ("Pederson"), Woodbridge's Comptroller, reported directly to Shapiro. [*Id*. ¶¶  94-99].

13.      Plaintiffs claim that Roseman directed internal and external sales agents to continue raising funds despite knowing that Woodbridge could not make interest payments to investors [*Id*. ¶ 95]; that Roseman was responsible for making sure that the "sales force"

followed the "script" despite his knowing that the representations about the Woodbridge investments were false and misleading [*Id.* ¶ 96]; and that Roseman, under Shapiro's direction, withheld material information from investors. [*Id.*]

14.     As to Pederson, Plaintiffs claim that at Shapiro's direction, she "concealed transactions", causing "millions of dollars in investor deposits to be misappropriated and improperly comingled to keep the scheme afloat", and that she helped Shapiro and Woodbridge to mislead auditors about Woodbridge's financial condition and use of investor money. [*Id.* ¶¶ 100-101].

15.     Notably, Plaintiffs allege that Shapiro used a Trust to "conceal his fraudulent scheme and hide the fact that most of the third-party borrowers and owners of the underlying property were Shapiro and his family" (the "RS Trust") [*Id.* ¶¶ 97].  Further, Plaintiffs claim that "[n]one of the publicly available documentation indicated that RS Trust was the ultimate owner of the underlying properties that had been purchased with FPCM and Fund Investors' funds". [*Id.*]

16.     Plaintiffs then move on to address "Defendants' Participation in the Woodbridge Scheme and conspiracy" under which they allege the involvement of the alleged sales agents, including the Klager Defendants, who they refer to as the "Klager Sales Agent Defendants". [D.E. 6, ¶ 115].  Specifically, without alleging any knowledge or awareness on the part of the Klager Defendants about the nature of the Woodbridge Scheme, Plaintiffs claim that they used the "Woodbridge sales script" to recommend and sell Woodbridge investments, which raised funds allowing Shapiro and Woodbridge to perpetrate the "Woodbridge Scheme" [*Id.* ¶¶ 116-117].

17.     Plaintiffs next allege that the Woodbridge Scheme was furthered by its auditor which "played a crucial role in validating Woodbridge's financial information and had a duty to ensure that the financial information did not contain misstatements and were free from fraud". [*Id*. ¶ 124].  Plaintiffs claim that the auditor's failure to audit Woodbridge according to auditing standards "permitted Woodbridge to misstate its financial condition and perpetrate its fraudulent scheme". [*Id*. ¶ 129].

18.     In describing what Plaintiffs claim to be "Co-conspirators' Misrepresentations Regarding Woodbridge Regulatory Proceedings", Plaintiffs claim that the states of Texas, Massachusetts, Arizona, Pennsylvania and Michigan issued cease and desist orders against Woodbridge entities for their sale of unregistered securities, and that "Shapiro instructed Roseman to affirmatively withhold this information from investors". [D.E. 6, ¶¶ 130-131].

19.     As part of the alleged co-conspirators' misrepresentations, Plaintiffs claim that "Woodbridge's sales agents falsely mischaracterized the dispositions of these regulatory actions to external sales agents claiming that the company was exonerated from any wrongdoing or fraudulent activity" when such a determination was not made. [*Id*. ¶ 132].

20.     Plaintiffs further claim that to deflect public and regulatory attention, Woodbridge transitioned investors to a "Co-Lending Opportunity" ("CLO") product, which mirrored the FPCM, and that in a scheme of civil conspiracy, the "Sales Agent Defendants made misrepresentations in the sale of these CLOs and concerning the regulatory proceedings involving Woodbridge. [*Id*. ¶¶  133-135].

21.     The SEC Complaint, which Plaintiffs briefly mention in the FAC, and of which the Court is permitted to take judicial notice,[1] sheds additional light on the lengths that Shapiro and Woodbridge allegedly went to surreptitiously carry out the "Woodbridge Scheme".   For example, Shapiro and Roseman orchestrated how to "manipulate Woodbridge's records" to show profits from certain property developments. [*See* Ex. A ¶ 128].   "Shapiro and RS Trust made every effort to hide the fact that most of the Third-Party Borrowers and owners of the underlying properties were Shapiro and his family" [*Id*. ¶ 130;132-133]. Further, the SEC alleges that in order to deceive outside sales agents like the Klager Defendants, Shapiro "hired a public relations firm to manipulate search engine results" and hide the alleged regulatory issues Plaintiffs describe in the FAC. [*Id*. ¶ 139].

22.     As further explained below, Plaintiffs "shotgun" style FAC fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 8(a)(2). Therefore, Plaintiff's' FAC against the Klager Defendants should be dismissed.

## MEMORANDUM OF LAW

### I. Standard of Review

#### A.     Formulaic Recitations, Labels, and Conclusions Do Not Survive a Motion to Dismiss.

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed "for failure to state a claim upon which relief can be granted".   In considering a motion to dismiss, the Court should not accept as true the allegations in a plaintiff's complaint which are merely legal conclusions, rather than factual assertions. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).   To survive a

---

[1]      *In re Unicapital Corp. Sec. Litig*., 149 F. Supp. 2d 1353, 1358 fn 2 (S.D. Fla. 2001) (holding that in securities litigation it is appropriate to take judicial notice of publicly filed documents at the motion to dismiss stage).

motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6), a complaint must contain ". . . enough facts to state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Only a complaint that states a plausible claim for relief survives a motion to dismiss. *See Ashcroft*, 129 S.Ct. at 1949 (2009); *see also Bell Atlantic Corp.*, 550 U.S. at 555. Although well-pled factual allegations are to be accepted as true, a well-pled complaint requires more that formulaic recitations, labels and conclusions. *Bell Atlantic Corp.*, 550 U.S. at 678.

### B.    Shotgun Pleadings are Disfavored.

The Eleventh Circuit has roundly, repeatedly, and consistently condemned "shotgun" pleadings, under Fed. R. Civ. P. 8(a)(2).   *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018).  Fed. R. Civ. P. 8(a)(2) requires a short, plain statement of the claim showing that the pleader is entitled to relief, to give defendants adequate notice of the claims against them, and the grounds upon which the claims rest. A "shotgun" pleading is easily identified by allegations that are "duplicative" "incoherent" "inconsistent" "wholly conclusory", and its material allegations, if any, are "buried beneath innumerable pages of rambling irrelevancies, making no distinction between the defendants engaged in the various alleged acts". *Id*.  Its allegations are often "not connected to a particular Defendant or set of Defendants, such that it is impossible to determine who did what". *Id*.

The Eleventh Circuit has identified four (4) types of shotgun pleadings as follows:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.  The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that

> does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  Fourth, shotgun pleading, in that some of the counts present more than one discrete claim for relief….

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-1323 (11th Cir. 2015)

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests" *Id*.

### 1.   Plaintiffs' FAC Should be Dismissed as a Shotgun Pleading

Plaintiffs' FAC is characteristic of a "shotgun" pleading as recently addressed by the Eleventh Circuit in *Vibe Micro, Inc.*, 878 F.3d at 1294 and *Weiland*, 792 F.3d at 1321-1323, because  Plaintiff's FAC is littered with conclusory, vague and immaterial facts that fail to provide the Klager Defendants with the required notice of the factual basis for the claims being asserted against them.  For example, Plaintiffs incorporate claims against each of the other nearly forty (40) defendants and non-parties, in paragraphs 1-143 of the FAC, into each FAC count against the Klager Defendants. [*See e.g.* D.E. 6, ¶¶ 148, 161,176, 186, 204, 214, 228].  This improper grouping of allegations against other defendants and non-parties into the allegations against the Klager Defendants, leaves the Klager Defendants without proper notice as to exactly what allegations are being made against them.  By not having such proper notice, it is impractical for the Klager Defendants to adequately defend against the claims in the FAC.  The FAC is also riddled with vague and immaterial facts.  For example, Plaintiffs allege that the "Woodbridge Scheme" depended on a "sales team", "in-house employees", "external sales agents", and a

9

"sales force", without any definition whatsoever of the individuals included in these groups. [D.E. 6, ¶¶ 79-93]  This again leaves the Klager Defendants without adequate notice because the allegations regarding these groups as set out in paragraphs 79-93 of the FAC are incorporated into each count against the Klager Defendants as provided in paragraphs 148, 161,176,186, 204, 214, 228 of the FAC.  The inconsistency and ambiguity in Plaintiffs' "shotgun" style FAC is further conflated by the section of the FAC which only describes "Defendants' Participation in the Woodbridge Scheme and Conspiracy" to involve the Klager Defendants alleged use of the "Woodbridge sales script", notwithstanding that Plaintiffs incorporated allegations concerning other involvement by co-defendants and non-parties, into each cause of action against them. [D.E. 6, ¶ 116].  This is the definition of pleading immaterial facts not obviously connected to any particular cause of action.

Therefore, because Plaintiffs' FAC is unquestionably a "shotgun" pleading in violation of Fed. R. Civ. P. 8(a)(2), the Court should dismiss the FAC on this basis, consistent with the Eleventh Circuit's reasoning in *Vibe Micro,* 878 F.3d at 1294.

## II. Argument

### A.    Plaintiffs Fail to State a Claim for Negligence against the Klager Defendants.

In Count II of the FAC, Plaintiff Gerald Roy attempts to state a claim for negligenceagainst the Klager Defendants. Florida law requires that in order to successfully assert a claim for negligence, a plaintiff must allege: "(1) a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure on the defendant's part to conform to the standard required, *i.e.*, a breach of the duty; (3) a reasonably close causal connection between the conduct and the resulting injury (proximate cause and cause in fact); and (4) actual loss or damage"

*Lincoln v. Fla. Gas Transmission Co. LLC*, 608 F. App'x 721, 723 (11th Cir. 2015). Whether a duty exists is usually a question of law, and may arise from authorities such as legislation or administrative  regulations; judicial interpretations of legislation or regulations; other judicial precedent; and a duty arising from the general facts of the case. *Zinn v. United States*, 835 F. Supp. 2d 1280, 1311 (S.D. Fla. 2011).

Based on these principles and the pleading standards under Rule 12(b)(6), Plaintiff has failed to state a claim for negligence against the Klager Defendants.  Specifically, the FAC does not state how or under what authority the Klager Defendants owed any duty to Plaintiff, and therefore, the FAC necessarily also does not and cannot allege any cognizable manner in which the Klager Defendants breached any such duties. [*See* D.E. 6, p. 35].  In other words, contrary to the pleading standard under Rule 12(b)(6), Plaintiff's negligence claim is not "well-pled" because it simply a formulaic recitation of labels and conclusions.  Therefore, Plaintiff's negligence claim should be dismissed.

**B.**      **Plaintiff Fails to State a Claim for Negligent Misrepresentation against the Klager Defendants.**

In Count V of the FAC, Plaintiff Gerald Roy attempts to state a claim for  negligent misrepresentation by claiming that the Klager Defendants misrepresented materials facts to him concerning the FPCMs and Fund Offerings. [D.E. 6 ¶ 162].  Under Florida law, negligent misrepresentation claims "sound in fraud" so the allegations surrounding this claim must be pled with particularity. *Kerruish v. Essex Holdings, Inc*., No. 16-60877-CIV, 2017 U.S. Dist. LEXIS 127183 at *4 (S.D. Fla. Aug. 8, 2017). The legal requirements for  negligent misrepresentation require a plaintiff to allege that: "(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the

statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation" *Visonic Sys. v. AT&T Dig. Life (In re SIG, Inc.)*, 971 F. Supp. 2d 1178, 1196 (S.D. Fla. 2013)

Because negligent misrepresentation claims are based on fraud, a plaintiff bringing this claim must meet the heightened pleading standards under Rule 9(b) for fraud claims. *Kerruish*, 2017 U.S. Dist. LEXIS 127183 at *4. The Rule 9(b) heightened pleading standard requires that a plaintiff allege: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *Id.*; *Visonic Sys,* 971 F. Supp. 2d 1178, 1198 (dismissing negligent misrepresentation claim for failure to meet the Rule 9(b) particularity requirements).

Here, based on the allegations in the FAC, the Plaintiffs have not met this heightened pleading standard to state a viable negligent misrepresentation claim against the Klager Defendants.  For example, Plaintiffs fail to show with any degree of precision that any Klager Defendant made any statement or omission and in what document or oral representation that they allegedly did so.  Instead, the FAC loosely claims that Woodbridge used a team of either "external sales agents", "sales force" or "sales agents" to carry out the "Woodbridge Scheme", without providing any definition or description of the individuals who were allegedly part of these groups, or what precise role each played in the alleged misrepresentations. [*See* D.E. 6, pp. 16-19].  It is also notable that the misrepresentations Plaintiffs describe to support Count V are a summary of what Plaintiffs described as the "Woodbridge Scheme" which Plaintiffs earlier

alleged was carried out by information that "Woodbridge represented to investors" or that "Woodbridge told investors", as opposed to representations that were made by any of the Klager Defendants. [D.E. 6 ¶¶ 76-77]. Therefore, this wholesale, undefined grouping of players, which Plaintiffs imprecisely claim were involved in making negligent misrepresentations, cannot withstand the heightened pleading standard of Rule 9 nor state a claim for which relief can be granted under Rule 12(b)(6).

### C.   Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty against the Klager Defendants.

Plaintiffs attempt to set out a claim for breach of fiduciary duty in Count VII of the FAC by alleging that the "Klager Sales Agent Defendants" purported to provide investment advice to Gerald Roy in regards to Woodbridge products. [D.E. 6 ¶ 177]. A claim for breach of fiduciary duty "must be pled with particularity" so that the court can determine as a matter of law whether there is such a duty. *Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1224 (S.D. Fla. 2015) (citations omitted) Further, to properly allege a claim for breach of fiduciary duty under Florida law, a plaintiff must establish: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause. *Id*. at 1223.

Count VIII of Plaintiffs' FAC is another formulaic and conclusory recitation of the elements of a claim without any factual support, and covering just five (5) short paragraphs. For example, Plaintiff merely alleges that the Klager Defendants owed Plaintiff Roy a fiduciary duty because they "held themselves out as experienced investment advisors" and Plaintiff Roy trusted them. [*See* D.E. 6, ¶ 177]. These bare-bones allegations do not "establish the 'special circumstances' of trust and confidence required for a fiduciary duty to exist". *See Wilson*, 77 F. Supp. 3d at 1224. Therefore, because Plaintiff is required to state a claim for breach of fiduciary

duty with particularity, yet fails to do so, Plaintiff's claim for breach of fiduciary duty against the Klager Defendants should be dismissed. *See id.* (dismissing claim for breach of fiduciary duty because plaintiffs failed to state with particularity the facts that purportedly created the duty that was breached).

### D. Plaintiffs Fail to State a Claim for Aiding and Abetting Breach of Fiduciary Duty against the Klager Defendants.

In Count X, Plaintiffs claim that the Klager Defendants aided and abetted Shapiro's breach of fiduciary duties to them. [D.E. 6 ¶ 186]. Florida law requires that a Plaintiff allege the following to maintain a claim for aiding and abetting breach of fiduciary duty: (1) a fiduciary duty on the part of the wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. *S&B/Bibb Hines Pb 3 Joint Venture v. Progress Energy Fla., Inc.*, 365 F. App'x 202, 207 (11th Cir. 2010). Similarly, the elements of a cause of action for aiding and abetting in Florida are: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor". *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904 (11th Cir. 2012).

Based on these standards, Plaintiff's claim for aiding and abetting breach of fiduciary duty fails because nothing in the FAC alleges that the Klager Defendants had any knowledge about Shapiro's alleged breach of his fiduciary duty. Specifically, Plaintiff claims that Shapiro breached his fiduciary duty to Plaintiffs through false offerings, misappropriations, comingling and misusing investor funds, and that "Shapiro maintained complete or substantially complete control over Woodbridge" [D.E.6 ¶¶ 188-190]. Further, in describing the "Woodbridge

Scheme," Plaintiff maintained that the scheme was orchestrated and exclusively operated by Shapiro. [*Id*. ¶ 73], based on information "Woodbridge represented to investors  [*Id*. ¶ 76] and information that "Woodbridge told investors" [*Id*. ¶ 77].  Nowhere does Plaintiff allege that the Klager Defendants had knowledge about the perpetration of the "Woodbridge Scheme" by Shapiro.  In fact, Plaintiff even acknowledged that their "Civil Conspiracy" claim was based on a "Woodbridge sales script" that "Woodbridge provided" to sales agents with false information, [*Id*. ¶ 85] and again, nowhere therein does Plaintiff allege any knowledge on the part of the Klager Defendants about this.  Indeed, in describing the role of the "Woodbridge Insiders", Plaintiffs explained the efforts Shapiro took to "conceal his fraudulent scheme" and stated that this information was not publicly available. [*See* eg. *Id*. ¶ 97].  Therefore, by Plaintiff's own allegations in the FAC, Plaintiffs fail to state a claim for aiding and abetting breach of fiduciary duty, because Plaintiff cannot establish any knowledge on the part of the Klager Defendants about the purported breaches by Shapiro.

### E. Plaintiffs Fail to State a Claim for the Sale of Unregistered Securities in Violation of Chapter 517, Florida Statutes, against the Klager Defendants.

Count XII of the FAC is a claim by Plaintiff Gerald Roy against the "Klager Sales Agent Defendants" for alleged violations of Chapter 517 for the sale of unregistered securities in Florida, specifically, FPCMs and Fund investments. [D.E. 6, ¶ 206].  Liability lies under Section 517.07 against a person who sells or offers to sell a security in the state of Florida that is not exempt or registered.   Therefore, Plaintiff must allege that the Klager Defendants sold, or offered to sell, FPCMs and Fund Investments and that these products are securities.

Plaintiff fails to adequately allege that the Klager Defendants sold or offered to sell FPCMs and Fund Investments in violation of Chapter 517, because these are the two primary

investments that Plaintiffs allege "Woodbridge sold to investors" in orchestrating the "Woodbridge Scheme". [*Id.* ¶¶ 73-74]. In fact, Plaintiff alleged in detail what "Woodridge represented to investors" in selling these products [*Id.* ¶¶ 76-77] and alleged that "Woodbridge threatened to terminate external sales agents like the Klager Sales Agent Defendants who would not permit Woodbridge to contact investors directly about rolling over short-term FPCMs into longer term Fund Offerings" [*Id.*¶ 149(d)]. Therefore, at a minimum, the FAC lacks sufficient specificity to state a plausible claim for relief.

Plaintiff also fails to sufficiently allege that the FPCM investments were a "security". As explained by *Reves v. Ernst & Young*, 494 U.S. 56, 65 (1990), a note is not a security when it is delivered in consumer financing, secures the mortgage to a home, evidences a character loan to a bank customer, or is short-term and secured by an assignment of accounts receivable. The *Reves* court reasoned that a note is less sensibly described as a "security" if it is exchanged to facilitate the purchase and sale of a minor asset or consumer good, correct seller cash flow difficulties, or advance some other commercial or consumer purpose. *Reves*, 494 U.S. at 66.

In this case, Plaintiff claims that the revenue source allowing Woodbridge to pay returns to investors was interest that a Woodbridge entity was to receive from loans to third-party owners of commercial real estate; that the loans would be made for a short-term; and that an additional source of revenue would come from purchasing property to develop and sell at a profit. [D.E. 6, ¶¶ 76-77] Therefore, the nature of the FPCM investment is not sensibly described as a security under the reasoning in *Reves* because they were based on short-term loans advanced for a commercial and consumer purpose. Plaintiffs' formulaic recitation of conclusions that the Klager Defendants sold or helped in selling the FPCM and Fund Investments with knowledge that they were unregistered securities in contrast with Plaintiffs' previous assertions

16

that the sales were perpetrated by Woodbridge, cannot pass the Rule 12(b)(6) standard of constituting a "well-pled" claim.  For these reasons, Plaintiffs have not established that the Klager Defendants sold or offered to sell securities, and fail to state a claim under Count XII for which relief can be granted.

### F.    Plaintiffs Fail to State a Cause of Action for Civil Conspiracy against the Klager Defendants.

Plaintiffs seek to assert a claim for Civil Conspiracy in Count XIII of the FAC.  Under Florida law, a plaintiff must allege the following elements to state a claim for civil conspiracy: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1315-1319 (S.D. Fla. 2014). A plaintiff alleging civil conspiracy must also state particularized facts that are more than vague and conclusory. *Id.* (citing *Carlson v. Armstrong World Indus., Inc.*, 693 F. Supp. 1073, 1078 (S.D. Fla. 1987)) (dismissing complaint where there was no mention of any particular act in furtherance of a conspiracy and where conspiracy claims were vague, general and conclusory).

In support of their civil conspiracy claim, Plaintiffs allege that Woodbridge, Shapiro, and the "Woodbridge Insiders" orchestrated a conspiracy with each other to carry out the "Woodbridge Scheme" by using "external sales agents" for the common purpose of generating profits. [D.E. 6, ¶¶ 215-218].  In a very vague and conclusory manner, Plaintiffs further allege that the "Sales Agent Defendants each reached and entered into an express or tacit agreement with at least one or more of the other co-conspirators, including specifically, but not limited to Shapiro and Roseman…" [*Id.* ¶¶ 219].  Plaintiffs' civil conspiracy claim is also deficient because

it is based on general, formulaic statements about what the "Sales Agent Defendants" allegedly knew or should have known, without the required particularized allegations as to the Klager Defendants. [*Id.* ¶¶ 220-222]. In addition, the Plaintiffs' civil conspiracy claim is deficient because it lacks sufficient allegations that the Klager Defendants acted with any knowledge that they were engaging in any wrongful conduct. *Alhassid*, 60 F. Supp. 3d at 1315-1319. Put simply, Plaintiffs' claims are not "well-pled" as required by Rule 12(b)(6) and contradict other allegations in the FAC suggesting that the Klager Defendants had no knowledge about the nature of the Woodbridge Scheme because Shapiro "maintained exclusive operational control over Woodbridge" [D.E. 6, ¶¶ 73], and "Shapiro employed the RS Trust to conceal his fraudulent scheme" [D.E. 6, ¶ 97]. Even the example Plaintiff attempts to set forth to support their claim that all "Sales Agent Defendants agreed to participate and join in a civil conspiracy" is inadequate, because that example involves an email exchange between "Woodbridge Insiders" and does not even mention the Klager Defendants. [D.E. 6, ¶¶ 223-224]. Therefore, Plaintiffs fail to state a claim against the Klager Defendants for civil conspiracy.

### G. Plaintiffs Fail to State a Claim for Vicarious Liability Against Defendant Atlantic Financial Services ("Atlantic").

In Count XIV, Plaintiffs claim vicarious liability against Defendant Atlantic for the alleged tortious conduct of its "affiliated Sales Agent Defendants" who were acting within the scope of their actual or apparent agency. [D.E. 6, ¶¶ 231; 244 ]. Plaintiffs' vicarious liability claim is conclusory and lacks sufficient allegations to state a cause of action.

"A person may be held vicariously liable if the person had the right and ability to supervise the violating party's wrongful conduct and had a strong financial interest in such activities" *Zuffa, LLC v. Roldan*, 2015 U.S. Dist. LEXIS 183826 at * 10 fn 5 (M.D. Fla., Aug.

13, 2015).  A claim for vicarious liability based upon actual agency requires that Plaintiff allege the following elements: "(1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1236 (11th Cir. 2014).  Similarly, a claim for vicarious liability based upon a claim of apparent agency requires that Plaintiff allege the following: "1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable and 3) that the claimant reasonably acted on such belief to his detriment." *Hajtman v. NCL (Bahamas) Ltd.*, 526 F. Supp. 2d 1324,1328 (S.D. Fla. 2007)

In this case, Plaintiffs' vicarious liability claim does not sufficiently allege any of the elements to state a claim for vicarious liability under actual or apparent agency  as to Defendant Atlantic.   Indeed, Plaintiffs' claim is so conclusory that it merely states as follows as to Defendant Atlantic:

> "Defendants Al and Michelle Klager were employed by, an officer of, or affiliated with Defendant Atlantic and acting within the course and scope of their actual or apparent agency with Atlantic at all times material to this action. [D.E. 6 ¶ 231]

> "Defendants . . . Atlantic . . . are vicariously liable for all damages or relief awarded as a result of the tortious conduct of their respective affiliated Sales Agent Defendants as alleged herein, each of whom were acting within the course and scope of their actual or apparent agency. [D.E. 6 ¶ 244]

Nowhere in these claims does Plaintiff sufficiently allege the requisite elements of supervision, direct financial interest, principal acknowledgement and control over the agent, representation by principal to plaintiff, etc., that are required to state a claim for vicarious

liability based on actual or apparent agency. *See Zuffa, LLC* 2015 U.S. Dist. LEXIS 183826 at *

10 fn 5; *Franza*, 772 F.3d at 1236; *Hajtman*, 526 F. Supp. 2d at1328   Therefore, Plaintiffs'

vicarious liability claim is not well-pled as required by the Rule 12(b)(6) standards and should be

dismissed for failure to state a cause of action.

## CONCLUSION

Plaintiffs' FAC falls well short of meeting the required pleading standards under Rule

12(b)(6) to state a claim against the Klager Defendants upon which relief can be granted, because

the FAC is a conclusory, formulaic recitation of allegations that fail to meet the heightened

pleading standards as required by law.  Plaintiffs' FAC is also due to be dismissed because it is

an impermissible "shotgun" pleading that violates the Rule 8(a)(2) pleading standards.

WHEREFORE, the Klager Defendants respectfully request that the Court enter an order

dismissing Plaintiffs First Amended Class Action Complaint and Demand for Jury Trial against

them, and grant any further relief that the Court deems just and proper.

Dated:  April 2, 2018

Respectfully submitted,

By: */s/ Michel A. Morgan*
Gregg J. Breitbart, Esq.
Florida Bar No. 843415
gbreitbart@kdvlaw.com
Michel A. Morgan, Esq.
Florida Bar No. 102764
mmorgan@kdvlaw.com
KAUFMAN DOLOWICH & VOLUCK, LLP
Counsel for Defendants Albert Klager, Michele
Klager and Atlantic Insurance and Financial
Services, Inc.
One Boca Place
2255 Glades Road, Suite 300E
Boca Raton, Florida 33431

Telephone: (561) 910-5650
Facsimile: (888) 464-7982

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of April, 2018, a true and correct  copy of the foregoing has been uploaded to the CM/ECF system and served upon all counsel or parties of record on the attached service list.

By: */s/ Michel A. Morgan*
      Michel A. Morgan

**SERVICE LIST**

| | |
|---|---|
| Andrew Steven Kwan, Esq.<br>James Wallace Beasly, Jr., Esq.<br>Joseph George Galardi, Esq.<br>Beasley Kramer & Galardi, P.A.<br>505 South Flager Drive, Suite 1500<br>West Palm Beach, FL 33401<br>(561)835-0900<br>(561)835-0939  Fax<br>Email:  kwan@beasleylaw.net<br>Email:  stringer@beasleylaw.net<br>Email: Galardi@beasleylaw.net<br>*Attorneys for Plaintiffs* | Jason S. Haselkorn, Esq.<br>Jonathan Brennan Butler, Esq.<br>Matthew N. Thibaut, Esq.<br>Ciklin Lubiz & O'Connell<br>515 N. Flagler Drive, Suite 2000<br>West Palm Beach, FL 33401<br>(561)832-5900<br>(561)833-4209 Fax<br>Email: jhaselkorn@ciklinlubitz.com<br>Email: jbutler@ciklinlubitz.com<br>Email: mthibaut@ciklinlubitz.com<br>*Attorneys for Plaintiffs* |
| Robert Charles Harris, Esq.<br>Haunter Taubman Fisher & Li, LLC<br>2 Alhambra Plaza, Suite 650<br>Coral Gables, FL 33134<br>(561)430-8260<br>(305)629-8877 Fax<br>Email:  rharris@htflawyers.com<br>*Attorneys for Defendants Barry M. Kornfeld,*<br>*Ferne E. Kornfeld, First Financial Tax Group,*<br>*Inc., and FEK Enterprises, Inc.* | Debra Ann Jenks, Esq.<br>Robert John Harvey, Esq.<br>Jenks & Harvey LLP<br>1555 Palm Beach Lakes Blvd. - 16th Floor<br>West Palm Beach, FL 33401<br>(561)303-2919<br>(561)419-9828<br>Email: djenks@jenksharveylaw.com<br>Email: rharvey@jenksharveylaw.com<br>*Attorneys for Defendant Kovak Securities,*<br>*Inc.* |
| Allan Michael Lerner, Esq.<br>Allan M. Lerner<br>2888 E. Oakland Park Boulevard<br>Ft. Lauderdale, FL 33306<br>(954)563-8111<br>(954)563-8522 Fax<br>Email: allan@lernerpa.com<br>*Attorney for Defendant Henry Wieniewitz and*<br>*Wieniewitz Wealth Management, LLC* | Old Security Financial Group Corp.<br>c/o Donald A. Mackenzie as Registered Agent<br>18 Augusta Pines Drive, Suite 200-E<br>Springs, TX 77389<br>*Defendant Old Security Financial Group*<br>*Corp.* |