IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:18-cv-80019-DMM

PAUL HONIG, *et al.*,

          Plaintiffs,

vs.

BARRY M. KORNFELD, *et al.*,

          Defendants.

**DEFENDANT HD VEST INVESTMENT SERVICES, INC.'S**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendant H.D. Vest Investment Services, Inc. ("HD Vest") moves, under Rule 12(b)(6)

and Rule 9(b) of the Federal Rules of Civil Procedure and Local Rule 7.1, to dismiss Plaintiffs'

First Amended Class Action Complaint and Demand for Jury Trial ("FAC," D.E. 6) and, in

support, states:

**INTRODUCTION**

The FAC does not plead a single detail about what HD Vest supposedly did wrong in this

case.  Indeed, the FAC barely mentions HD Vest.  Plaintiffs assert only three claims against HD

Vest, all of which are derivative in nature: aiding and abetting the breach of fiduciary duties

allegedly owed by Woodbridge's officers (Count X); conspiring with others to commit fraud

(Count XIII); and "Vicarious Liability" (Count XIV).[1]  But Plaintiffs fail to support their claims

with any factual details – such as allegations of meetings, presentations, phone calls,

---

[1] Because it is predicated on the aiding and abetting and civil conspiracy claims directed at HD Vest's alleged agent, the FAC's "Vicarious Liability" count is subject to dismissal for the same reasons set forth below.

conversations, emails, contracts, or anything else involving HD Vest – from which this Court can draw the reasonable inference that HD Vest actually engaged in the alleged misconduct. Instead, Plaintiffs merely lump HD Vest with numerous other unrelated parties into a small handful of generic, conclusory paragraphs.

This lack of particularity is fatal to Plaintiffs' claims. The claims against HD Vest require detailed pleading of facts supporting their key elements. In fact, because Plaintiffs allege that HD Vest engaged in a conspiracy to defraud, they must meet Rule 9(b)'s heightened standards – pleading specific facts creating a strong inference that HD Vest possessed fraudulent intent – which they manifestly have failed to do. Accordingly, the Court should dismiss the claims against HD Vest. And because Plaintiffs have already amended their complaint once – and have plainly engaged in impermissible 'shotgun' pleading the second time around – the dismissal should be with prejudice.

## PLAINTIFFS' FACTUAL ALLEGATIONS

The vast majority of the wrongdoing alleged by Plaintiffs does not involve HD Vest at all. Plaintiffs allege that they were the victims of a fraudulent scheme "knowingly engineered and executed" not by HD Vest, but by Woodbridge and Shapiro. (FAC ¶ 5.) According to the FAC, it was Shapiro and Woodbridge who engaged in a "Ponzi" scheme pursuant to which they sold investors two different investments, neither of which were registered with the SEC. (FAC ¶¶ 73-74.)

The FAC refers to the subject of the action as "the Woodbridge Scheme," (FAC ¶ 72-78), and describes in detail the fraudulent conduct of the "Woodbridge Insiders" – a group to which HD Vest does not belong. (FAC ¶ 94-102). The FAC alleges that "Shapiro orchestrated and operated the fraud through Woodbridge and its various affiliated entities" (FAC ¶ 94) – a group

to which HD Vest is also not alleged to have belonged.  The FAC alleges that Woodbridge directed its internal bookkeeper, Nina Pedersen, to conceal the misappropriation and comingling of investor deposits. (FAC ¶ 100.)  HD Vest is not mentioned at all in the allegations regarding the purported fraudulent scheme.

The only nexus alleged with HD Vest is that the scheme "could not have been possible without the participation of" other defendants (FAC ¶ 102), namely Shapiro and Woodbridge's use of numerous "Non-Resident Sales Agent Defendants," including HD Vest,[2] to sell the investments through the use of a "false and misleading Woodbridge sales script."  (FAC ¶ 121.)[3]

HD Vest is not alleged to have been a participant in Shapiro and Woodbridge's scheme. The FAC further alleges that Shapiro and Woodbridge concealed information from not only their investors, but also HD Vest and the other defendants.  (FAC ¶¶ 78, 85, 96, 121, 218.)  In fact, a fair reading of the FAC portrays HD Vest as nothing more than another unwitting victim of Woodbridge and Shapiro.  Indeed, Plaintiffs allege that even Woodbridge's outside auditors were duped (FAC ¶ 101).[4]

Despite a detailed account of Shapiro and Woodbridge's fraudulent scheme, the FAC provides no substantive allegations regarding any wrongdoing by HD Vest.  Rather, the FAC

---

[2]  While the Court may not be able to consider this fact in deciding this Motion, the record will show that HD Vest never offered or sold any Woodbridge investments, received money from Woodbridge, or had any agreements with Woodbridge.

[3] The FAC identified approximately twenty "Sales Agent Defendants," in addition to their principals.

[4] Plaintiffs note that a related action, *SEC v. Robert H. Shapiro, Woodbridge Group of Companies, LLC, et al*, No. 17-24624 (S.D. Fla) (the "SEC Action") is pending before this Court. (FAC ¶ 11.)  Plaintiffs apparently seek to piggyback on that action, which does not name HD Vest, in a vain attempt to move against uninvolved third parties for what Plaintiffs allege was a Ponzi scheme orchestrated by the defendants in the SEC Action.  (FAC ¶¶ 1, 73, 78.)

lumps together all twenty-eight of the Sales Agent Defendants and alleges generally that the Sales Agent Defendants mischaracterized "regulatory actions" and "made numerous misrepresentations in connection with the sale" of Woodbridge products, (FAC ¶¶ 132-133), but fails to identify specifically any such alleged statements by HD Vest.

Unable to allege facts supporting claims of wrongdoing against HD Vest, the FAC relies on general allegations of derivative liability without specifying underlying wrongful conduct – except to state generally that "[a]ll of the Sales Agent Defendants made similar misrepresentations and omissions to the putative class regarding the regulatory proceedings involving Woodbridge." (FAC ¶¶ 135, 193, 244.)

Even when the FAC purports to allege conduct by HD Vest, it is merely a general allegation against the Sales Agent Defendants as a whole.  And even those allegations are merely conclusory statements that each Sales Agent Defendant committed an unnamed "overt act," that they "should have known" one or another fact (without explaining how or why it should have been known), or that in some unidentified way they "agreed" to participate.  (FAC ¶¶ 220-223.)

The Counts against HD Vest fail to state a claim upon which relief can be granted and should be dismissed.

## ARGUMENT

**1.      Plaintiffs Fail to Meet Applicable Pleading Standards**

The FAC falls fatally short of the well-established pleading requirements.  To survive dismissal under Rule 12(b)(6), a pleading must include factual allegations sufficient to "raise a right to relief above the speculative level" and Plaintiffs are obligated to provide more than conclusory statements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do." *Id*. To survive a motion to dismiss, a

complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 547. A claim lacks sufficient plausibility unless it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). The FAC provides nothing but unsupported conclusions and formulaic recitations of the elements of the causes of action alleged against HD Vest. The purported factual allegations in the FAC with respect to HD Vest are so lacking in particularized facts and substantive support that they fail to provide HD Vest with notice of the nature of the claims alleged against it.

As discussed in more detail below, Plaintiffs' conspiracy claim must also pass muster under Rule 9(b)'s heightened pleading standards. Under this rule, Plaintiffs must plead with particularity facts showing that HD Vest engaged in a fraudulent scheme, such as what the alleged scheme to defraud consisted of, when the scheme started and the dates of activity thereafter, who participated in the scheme, the participants' individual roles in the scheme, and how the scheme was carried out. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007), *reh'g denied and reh'g en banc denied*, 254 Fed. App'x 800 (11th Cir. 2007), *cert. denied*, 552 U.S. 990 (2007) (affirming dismissal of conspiracy to defraud claim). Plaintiffs have not met these pleading requirements.

**2.      Plaintiffs Fail to State a Claim for Aiding and Abetting Breach of Fiduciary Duty**

The FAC fails to allege facts sufficient to give rise to a plausible inference on the most basic elements of an adding and abetting claim – knowledge of wrongdoing and "substantial assistance and encouragement." Under Florida law, a cause of action for aiding and abetting breach of fiduciary duty requires "(1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of the breach by the alleged aider and abettor and

(4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991). An allegation of aiding and abetting breach of fiduciary duty is deficient if the pleading includes only a mechanical recitation of the elements or conclusory allegations. *See Turnberry Village North Tower Condominium Association, Inc.*, 224 So. 3d 266, 267 (Fla. 3d DCA 2017).

The FAC fails to meet these basic requirements. The FAC arguably pleads the first two elements of this claim, alleging that Shapiro, by reason of his control over the Woodbridge, owed Plaintiffs "fiduciary duties of loyalty, care, and to deal honestly and in good faith," (FAC ¶ 189), and that he breached this duty "by misappropriating, comingling, and otherwise misusing investor funds." (FAC ¶ 190.) But the FAC is devoid of any substantive allegation supporting the third and fourth elements of this cause of action. On the third element – the aider and abettor's knowledge of the underlying breach – the FAC does little more than mechanically recite in paragraph 191 that the Sales Agent Defendants "substantially assisted Shapiro's breaches of fiduciary duty with knowledge, general awareness, or recklessness." Other paragraphs similarly contend in conclusory fashion that HD Vest "knew or should have known" certain facts. (*See* FAC ¶¶ 6, 221-222.)

These "legal conclusion[s] couched as [] factual allegation[s]" are simply insufficient to survive a motion to dismiss. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). The FAC nowhere alleges facts (as opposed to conclusions) from which the Court reasonably could infer that HD Vest had **actual** knowledge of Shapiro and Woodbridge's claimed misrepresentations. The FAC does not, for instance, detail any supposed 'red flags' that HD Vest saw that hinted at alleged breaches of duty, or provide specifics about any contracts, relationships, meetings or other connections between HD Vest and Woodbridge from which one could reasonably deduce

6

HD Vest could have had such knowledge.  Nothing in the FAC explains how HD Vest – a firm in Texas – learned about alleged misconduct at a company in South Florida.  If anything, the FAC emphasizes that Woodbridge and Shapiro actively concealed information from investors, making it far less plausible that "Sales Agent Defendants" like HD Vest could have known of Woodbridge and Shapiro's alleged wrongdoing.  (FAC ¶¶ 78, 85, 96.)

There are likewise no substantive allegations showing how (or why) HD Vest provided "substantial assistance or encouragement" to Shapiro and Woodbridge.  Plaintiffs instead merely recite the bare legal conclusion that "[t]he Sales Agent Defendants substantially assisted in Shapiro's breaches of fiduciary duty." (FAC ¶191.)  This pleading is indistinguishable from what the Supreme Court rejected as insufficient in *Iqbal*, where the plaintiffs alleged that the defendants "knew of, condoned, and willfully and maliciously agreed to subject" plaintiff to harsh conditions "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate purpose."   556 U.S. at 680-81.  The Court flatly declared this "formulaic recitation of the elements" of plaintiff's claim to be unworthy of being taken as true. *Id.* at 681.

Plaintiffs' allegation that the Sales Agent Defendants supposedly used a Woodbridge "sales script" does not supply the necessary specificity.  (FAC ¶ 121.)  Using a "sales script" – or any other promotional literature – does not imply knowledge of its alleged falsity.  Again, Plaintiffs allege no details showing how HD Vest knew the "sales script" was false; there are, for instance, no allegations that HD Vest helped prepare this document or had learned of its alleged

falsity through some other specific means, such as a meeting or email.[5]  In the absence of such

specificity, Plaintiffs' aiding and abetting claim should be dismissed.

3.        **Plaintiffs Fail to State a Claim for Civil Conspiracy**

Plaintiffs also allege that HD Vest engaged in a civil conspiracy to defraud Woodbridge

investors.   (*E.g.*, FAC ¶ 218) ("The common purpose and design of the conspiracy was to

generate substantial wealth and profits through the sale of Woodbridge Investments by engaging

in uniform, widespread misrepresentations [and] omissions…").[6] These allegations are equally

deficient.  To plead civil conspiracy, a plaintiff must allege "(a) an agreement between two or

more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of

some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts

done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan & Trust v.*

*Abbott,* 561 Fed. App'x 882, 886 (11th Cir. 2014); *see also Philip Morris USA, Inc. v. Russo*,

175 So. 3d 681, 686 n.9 (Fla. 2015); *Florida Fern Growers Ass'n v. Concerned Citizens of*

*Putnam County,* 616 So. 2d 562, 565 (Fla. 5th DCA 1993). "To allege conspiracy, Plaintiff must

---

[5] Because HD Vest never offered or sold Woodbridge investments, it is unaware of any "sales script" or other promotional literature relating to Woodbridge.  Therefore, HD Vest does not believe Plaintiffs have a good faith basis to allege, in accordance with their obligations under the Rules, that HD Vest ever used such documents.

[6] Realizing that they cannot meet Rule 9(b)'s stringent pleading requirements, Plaintiffs try avoid Rule 9(b) by asserting in Paragraph 219 that the "Sales Agent Defendants" conspired to make negligent misrepresentations and omissions.  The problem for Plaintiffs is that conspiracy to act negligently is a "non sequitur," since conspiracy requires the specific intent of the participants to act in concert. *See, e.g., Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1440 (M.D. Fla. 1998) (applying Florida law); *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1369 (N.D. Ga. 2012) (Georgia law).  Therefore, to the extent Plaintiffs' conspiracy claim is premised on negligent conduct, it must fail as a matter of law.  And to the extent it is based on intentional conduct, Plaintiffs must meet Rule 9(b)'s pleading requirements, which they have not done. *See Sonnenreich v. Philip Morris, Inc.*, 929 F. Supp. 416, 419 (S.D. Fla. 1996) (reaching this precise conclusion).

allege particularized facts that are more than vague or conclusory." *Whitney Nat. Bank v. SDC Cmtys., Inc.*, No. 8:09–cv–01788–EAK–TBM, 2010 WL 1270264, at \*4 (M.D. Fla. April 1, 2010).

A claim of conspiracy to defraud must be pled with the specificity required by Rule 9(b). *See Martinez*, 480 F.3d at 1067-68.   That is, Rule 9(b) dictates that the circumstances constituting fraud shall be stated with particularity, and in the case of an alleged conspiracy to defraud, the agreement of the parties to the conspiracy must be pled with the same particularity. *Id.* at 1066-68.

"Without more, parallel conduct [also] does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 554.  "A cause of action for civil conspiracy should allege the scope of the conspiracy, its participants, and when the agreement was entered into." *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & Shareholder Derivative Litig.*, 690 F. Supp. 2d 1296, 1311 (S.D. Fla. 2010).  Further, under Florida law, an allegation of scienter is required to sustain a cause of action for civil conspiracy.  *See Peoples Nat'l Bank v. First Union Nat'l Bank,* 667 So. 2d 876, 879 (Fla. 3d DCA 1996) ("The essential elements of [civil conspiracy] are a malicious motive and coercion through numbers or economic influence.") (*quoting Churruca v. Miami Jai Alai, Inc.,* 353 So. 2d 547, 550 (Fla. 1977)).

The FAC is devoid of any specific, substantive allegation that HD Vest entered into an agreement with Shapiro, Woodbridge – or any other defendant – to commit any unlawful act.  To survive dismissal under Rule 12(b)(6), Plaintiffs must do more than contend that Shapiro and Woodbridge used HD Vest as an "instrumentality" of their scheme. *See Freyre v. Hillsborough Cty. Sheriff's Office*, No. 13–2873, 2014 WL 2112043, at \*7 (M.D. Fla. May 14, 2014) ("A

decision reached by [an individual] based on the information presented to her by other individuals does not plausibly constitute a conspiracy").

As noted in detail above, the allegations in the FAC fail to provide the requisite particularity, instead merely reciting the elements of a conspiracy charge without any factual support. Plaintiffs generically contend, for instance, that "[t]he common purpose and design of the conspiracy was to generate substantial wealth and profits through the sale of Woodbridge Investments by engaging in uniform, widespread misrepresentations, omissions, and breaches of fiduciary duty, to the grave injury of the often elderly and unsophisticated investors." (FAC ¶ 218.) This is nothing more than a blanket, conclusory statement that lumps HD Vest in with more than two dozen other completely unrelated parties. Plaintiffs' "conspiracy" section is replete with such facially defective pleading. (*See* FAC ¶¶ 219-224, 225, 227.)[7] The closest the FAC gets to providing specificity is in paragraph 224, which recites an email between Woodbridge insiders. But what is most notable about this "example" is that <u>HD Vest is not party to it or mentioned in it anywhere</u>.

Plaintiffs' rote and conclusory conspiracy allegations fail to meet either Rules 12(b)(6) or 9(b). Therefore, this claim should be dismissed.

**4.      The FAC is an Impermissible Shotgun Pleading**

The FAC is a 58-page document with 244 paragraphs and 14 purported counts against 40 defendants. Even more problematic, the FAC lumps together 29 "Non-Resident Sales Agent Defendants," of which HD Vest is allegedly one, with no distinction as to which defendant allegedly committed what act or omission. (FAC ¶¶ 85, 121, 218.) The allegations against all

---

[7] Of course, Plaintiffs do not allege that HD Vest profited from the sale of these products, nor could they in good faith, since HD Vest received nothing from Woodbridge.

defendants, the Sales Agent Defendants or the Non-Resident Sales Agent Defendants improperly group these parties together and contaminate the FAC throughout.  In particular, this impermissibly vague grouping of unrelated defendants makes it impossible to decipher what specific acts HD Vest is alleged to have committed in aiding or abetting or in support of an alleged civil conspiracy.

This form of pleading, known as "shotgun pleading," is generally condemned by federal courts, including most prominently the Eleventh Circuit.  In fact, the FAC in this matter is even more egregious than the complaint addressed by the Eleventh Circuit below:

> The Complaint is a quintessential "shotgun" pleading of the kind we have condemned repeatedly, beginning at least as early as 1991.  It is in no sense the "short and plain statement of the claim" required by Rule 8 of the Federal Rules of Civil Procedure.  It is fifty-eight pages long.  It names fourteen defendants, and all defendants are charged in each count.  **The complaint is replete with allegations that "the defendants" engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of**.  Each count incorporates by reference the allegations made in a section entitled "General Factual Allegations" – which comprises 146 numbered paragraphs – while also incorporating the allegations of any count or counts that precede it.  The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.  This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts…and is the type of complaint that we have criticized time and again.

*Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (emphasis added) (citations omitted). Shotgun pleadings are routinely dismissed or stricken.  *See id* (remanding to trial court with instructions to strike complaint and requiring "repleading of all claims in a complaint that respects the requirements of Rule 8").

Therefore, because the FAC is a shotgun pleading, it should be dismissed, or in the alternative, stricken and re-pled.

11

## CONCLUSION

For the reasons set forth above, Defendant HD Vest Investment Services, Inc. respectfully requests an order dismissing Plaintiffs' First Amended Complaint and granting all other and further relief deemed as the Court deems just and appropriate.

Date: April 6, 2018                                    Respectfully submitted,

                                                       **BARITZ & COLMAN LLP**
                                                       1075 Broken Sound Parkway NW, Suite 102
                                                       Boca Raton, Florida 33487
                                                       Telephone: (561) 864-5100
                                                       Facsimile: (561) 864-5101

                                                       */s/ Andrew Thomson*
                                                       Neil S. Baritz
                                                       Florida Bar No. 003468
                                                       nbaritz@baritzcolman.com
                                                       Andrew Thomson
                                                       Florida Bar No. 057672
                                                       athomson@baritzcolman.com

## CERTIFICATE OF SERVICE

I CERTIFY that, on April 6, 2018, I served the foregoing through CM/ECF, which will serve a copy on all counsel of record.

                                                       */s/ Andrew Thomson*
                                                       Andrew Thomson