UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:18-cv-80019-DMM

PAUL HONIG, CARLA HONIG,
DAVID LIPPMAN, CAROLYN
LIPPMAN, JOHN HERTVIK,
GERALD ROY, and HEMANT
NANAVATY on behalf of themselves
and a class of all others similarly situated,

      Plaintiffs,

vs.

BARRY M. KORNFELD, et al.

      Defendants,

_____/

**PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO
DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, Paul Honig, Carla Honig, David Lippman, Carolyn Lippman, John Hertvik, Gerald Roy and Hemant Nanavaty (collectively, "Plaintiffs"), by and through their undersigned counsel and pursuant to *Fed.R.Civ.P.* 12(b)(6) and S.D. Fla. Local Rule 7.1, respectfully submit their Omnibus Response in Opposition to the Motions to Dismiss filed by Defendants Barry M. Kornfeld, Ferne E. Kornfeld, First Financial Tax Group, Inc., FEK Enterprises, Inc. [DE 41], Lynette M. Robbins, Theodore F. Leutz [DE 94], Albert D. Klager, Michelle Klager, Atlantic Insurance and Financial Services, Inc. [DE 53], Gordon C. Hannah, Retirement Planning Solutions, LLC [DE 69], Douglas R. Andrew, Paramount Financial Services, Inc. [DE 75], Robert S. Davis, Jr., Tony MacKenzie, Paula Burke, Old Security Financial Group Corp. [DE 74], Kovak Securities, Inc. [DE 64], Jerry Davis Raines [DE 66], HD Vest Investment Services, Inc. [DE 63], David Ouelette, Shield Financial Group, Inc. [DE 79], Henry "Trae" Wieniewitz, Wieniewitz Wealth Management, LLC [DE 65] and GBH CPAS, PC [DE 70].

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

MEMORANDUM OF LAW .............................................................................3

   I.    Applicable Standard of Review ......................................................3

   II.   The Amended Complaint States Causes of Action for Negligence and
        Negligent Misrepresentations in Full Compliance with Federal Rule
        of Civil Procedure 9(b) (Counts I -VI) ............................................4

        A.   The Negligence Claims (Counts I through III) ...........................5
        B.   The Negligent Misrepresentation Claims (Counts IV through VI) ..........6
        C.   Plaintiffs' Allegations Satisfy Rule 9(b)...................................7

   III.  The Amended Complaint States Causes of Action for
        Breach of Fiduciary Duty Against the Kornfeld, Klager
        and Knowles Defendants ..............................................................10

   IV.  The Amended Complaint States a Claim for Aiding and Abetting
        Breach of Fiduciary Duty (Count X) ...........................................12

   V.   Plaintiffs Alleged a Cause of Action Under Section 517.211, Because
        The Woodbridge Investments are "Securities" (Counts XI, XII) ...................14

        A.   The First *Reves* Factor ............................................................16
        B.   The Second *Reves* Factor........................................................17
        C.   The Third *Reves* Factor..........................................................18
        D.   The Fourth *Reves* Factor .......................................................18

   VI.  Plaintiffs Have Properly Pled Their Claim
        for Civil Conspiracy (Count XIII) ..............................................19

   VII.  Plaintiffs' Vicarious Liability Claim is Not Subject to Dismissal .................28

   VIII. The Non-Resident Defendants Are Subject to Florida's Long
        Arm Jurisdiction .........................................................................28

   IX.  The Amended Complaint Is Not A Shotgun Pleading ...................33

   X.   Plaintiffs Seek Leave to Amend Their Clams Against GBH CPAS, P.C. ......37

CONCLUSION ................................................................................................38

ii

# <u>TABLE OF AUTHORITY</u>

**<u>Cases</u>**                                                                                     **<u>Page</u>**

*Abramson v. Walt Disney Co.*,
    132 Fed. Appx. 273 (11th Cir. 2005) ................................................................. 31

*Adickes v. S. H. Kress & Co.*,
    398 U.S. 144 (1970) ..........................................................................................21

*American United Life Ins. Co. v. Martinez*,
    480 F.3d 1043 (11th Cir. 2007) ......................................................................... 3

*AmeriFirst Bank v. Bomar*,
    757 F. Supp. 1365 (S.D. Fla. 1991) ................................................................. 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 4

*AXA Equitable Life Ins. Co. v. Infinity Fin. Group*,
    608 F. Supp. 2d 1349 (S.D. Fla. 2009) ............................................................33

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................ 3, 4, 26

*Burger v. Hartley*,
    896 F. Supp. 2d 1157 (S.D. Fla. 2012) ............................................................ 27

*Charles v. Fla. Foreclosure Placement Ctr.*,
    988 So. 2d 1157 (Fla. 3d DCA 2008) ..........................................................20-21

*Clay Electric Co-op, Inc. v. Johnson*,
    873 So. 2d 1182 (Fla. 2003) ............................................................................... 5

*Coast Life Ins. Co. v. Life Brokerage Partners LLC*,
    No. 08-80897-CIV, 2009 WL 2957749 (S.D. Fla. Sept. 9, 2009) ....................... 26

*Deal v. Asset Mgmt. Grp.*,
    1992 WL 212482 (N.D. Ill. Aug. 28, 1992) ...................................................... 17

*Doe v. Evans*,
    814 So.2d 370 (Fla. 2002) ................................................................................ 10

*Donofrio v. Matassini*,
    503 So.2d 1278 (Fla. 2d DCA 1987) ..........................................................21, 23

*Elandia Int'l, Inc. v. Ah Koy,*
    690 F. Supp. 2d 1317 (S.D. Fla. 2010) ................................................................. 30

*Financial Sec. Assur. Inc., v. Stephens Inc.,*
    500 F.3d 1276 (11th Cir. 2007) ....................................................................... 3-4, 17

*Fla. Fern. Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty.,*
    616 So. 2d 562 (Fla. 2d DCA 1993) ..................................................................... 20

*Freyre v. Hillsborough Cty. Sheriffs Office,*
    No. 8:13-CV-02873-T-27, 2014 WL 6885913 (M.D. Fla. Dec. 5, 2014) .............. 27

*Future Tech. Today, Inc. v. OSP Healthcare Sys.,*
    218 F.3d 1247 (11th Cir. 2000) ............................................................................. 32

*Goin v. Comm 'n on Ethics,*
    658 So. 2d 1131 (Fla. 1st DCA 1995) ................................................................... 24

*Gracey v. Eaker,*
    837 So. 2d 348 (Fla. 2002) .................................................................................... 11

*Great Western Bank and Trust v. Kotz,*
    532 F.2d 1252 (9th Cir. 1976) ............................................................................... 19

*Grunewald v. United States,*
    353 U.S. 391 (1957) .............................................................................................. 21

*Hampton v. State,*
    135 So. 3d 440 (Fla. 5th DCA 2014) .................................................................... 23

*Hasenfits v. Secord,*
    797 F. Supp. 958 (S.D. Fla. 1989) ........................................................................ 29

*Hogan v. Provident Life & Accident Ins. Co.,*
    665 F. Supp. 2d 1273 (M.D. Fla. 2009) ................................................................ 10

*In re Advanta Corp. Sec. Litig.,*
    180 F.3d 525 (3d Cir. 1999) .................................................................................... 9

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) ........................................................................... 8, 10

*In the Matter of Southeast Banking Corp.,*
    69 F.3d 1539 (11th Cir. 1995) ................................................................................. 4

iv

*Life Ins. Co. of N. Am. v. Del Aguila,*
    417 So. 2d 651 (Fla. 1982) ........................................................................28

*Liquidation Comm '71 of Banco Intercontinental, S.A. v. Renta,*
    530 F.3d 1339 (11th Cir. 2008) ............................................................22, 25

*Machtinger v. Inertial Airline Servs., Inc.,*
    937 So. 2d 730 (Fla. 3d DCA 2006) ..................................................... 30

*McNabb v. SEC,*
    298 F.3d 1126 (9th Cir. 2002) ............................................................ 18

*Nicholson v. Kellin,*
    481 So. 2d 931 (Fla. 5th DCA 1985) ................................................... 29

*Platypus Wear, Inc. v. Clarke Model & Co.,*
    515 F. Supp. 2d 1288 (S.D. Fla. 2007) ................................................ 30

*Pollack v. Laidlaw Holdings, Inc.,*
    27 F.3d 808 (2d Cir. 1994) ............................................................16, 18

*Primerica Financial Services, Inc. v. Mitchell,*
48 F. Supp. 2d 1363 (S.D. Fla. 1999) ................................................... 22

*Principal Life Ins. Co. v. Mosberg,*
    No. 09-22341-CIV, 2010 WL 473042 (S.D. Fla. Feb. 5, 2010) ........................... 26

*Regions Bank v. Kaplan,*
    No. 8:12-CV-1837-T-17MAP, 2014 WL 1292888 (M.D. Fla. Mar. 31, 2014) ...........22, 26

*Reves v. Ernst & Young,*
    494 U.S. 56 (1990) ........................................................................ *passim*

*Seagood Trading Corp. v. Jerrico, Inc.,*
    924 F.2d 1555 (11th Cir. 1991) ........................................................... 21

*SEC v. Levin,*
    2014 WL 11878357 (S.D. Fla. Oct. 6, 2014) ........................................... 15

*SEC v. Thompson,*
    732 F.3d 1151 (10th Cir. 2013) ........................................................... 17

*SEC v. Wallenbrock,*
    313 F.3d 532 (9th Cir. 2002) ........................................................... 16-17

*Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC,*
 650 F. Supp. 2d 1213 (S.D. Fla. 2009) ................................................................. 33

*Stoiber v. SEC,*
 161 F.3d 745 (D.C. Cir. 1998) ............................................................................. 18

*Thorpe v. Gelbwaks,*
 953 So. 2d 606 (Fla. 5th DCA 2007) .................................................................. 32

*United States v. Florida W. Intl Airways, Inc.,*
 No. 10-20864-CR, 2011 WL 8866021 (S.D. Fla. Sept. 13, 2011) ....................... 22

*United States v. Masonite Corp.,*
 316 U.S. 265 (1942) ............................................................................................. 21

*United States v. Starrett,*
 55 F.3d 1525 (11th Cir. 1995) .................................................................. 22-23, 26

*United States v. Taylor,*
 17 F.3d 333 (11th Cir. 1994) ...................................................................... 26-27, 29

*United States v. Toler,*
 144 F.3d 1423 (11th Cir. 1998) ........................................................................... 21

*Visonic Sys. V. AT&T Dig. Life,*
 971 F. Supp. 2d 1178 (S.D. Fla 2013) .................................................................. 6

*Walter Lorenz Surgical, Inc. v. Teague,*
 721 So. 2d 358 (Fla. 1st DCA 1998) .................................................................... 32

*Weiland v. Palm Beach County Sheriff's Office,*
 792 F.3d 1313 (11th Cir. 2015) ....................................................................... 35-36

*Wilcox v. Stout,*
 637 So. 2d at 335 (2d DCA 1994) ..................................................................... 29-30

*Winn & Lovett Grocery Co. v. Archer,*
 171 So.2d 214 (Fla. 1936) ..................................................................................... 28

*Woods v. Barnett Bank of Ft. Lauderdale,*
 765 F.2d 1004 (11th Cir. 1985) ........................................................................... 13

*Wright v. Downs,*
 1992 WL 168104 (6th Cir. July 17, 1992) ........................................................... 17

**<u>Statutes and Rules</u>**

15 U.S.C. § 78c(a)(10) ............................................................................................ 15

Fed.R.Civ.P 8(a)(2) ........................................................................................... 3, 37

Fed.R.Civ.P. 12(b) ............................................................................................. 2-3

Fla. Stat. § 48.193(1)(a) .................................................................................. 29-30

Fla. Stat. § 517.021(22) ....................................................................................... 15

Fla. Stat. § 517.07 .......................................................................................... 14, 19

Fla. Stat. § 517.211 ........................................................................................ 14, 19

## INTRODUCTION

Plaintiffs commenced this action on behalf of themselves and a class of investors who fell prey to a now admitted Ponzi scheme perpetrated by the Woodbridge Group of Companies, LLC d/b/a Woodbridge Wealth ("Woodbridge") and its owner, Robert H. Shapiro ("Shapiro").

As demonstrated in Plaintiffs' First Amended Class Action Complaint ("FAC" or "Amended Complaint"), Woodbridge's scheme was dependent upon, and could not have succeeded, without the substantial aid and assistance of the external Sales Agent Defendants. Each of the named Sales Agent Defendants thus agreed to join and participate in a civil conspiracy with Woodbridge to market and sell its securities to the Plaintiffs and other unsuspecting members of the public, in exchange for substantial commissions. The Sales Agent Defendants marketed and sold Woodbridge's promissory notes and fund offerings – all of which were unregistered securities – based on uniform misrepresentations and scripted sales pitches that they were "low-risk, high-yield investments backed by high interest rate loans made to commercial borrowers," which the Defendants knew or should have known were false, inaccurate and misleading.

Based on this and other misconduct, Plaintiffs' Amended Complaint pleads ultimate facts in support of each element of the following claims:

- **Count I**:  Negligence against the Kornfeld Sales Agent Defendants (collectively, "Kornfeld") by the Plaintiffs who purchased securities from the Kornfeld Defendants, namely Honig, Lippman and Hertvik.

- **Count II**: Negligence against the Klager Sales Agent Defendants (collectively, "Klager") by Plaintiff Roy, who purchased securities from the Klager Defendants.

- **Count III**: Negligence against the Knowles System Agent Defendants (collectively, "Knowles") by Plaintiff Nanavaty, who purchased securities from Knowles.

- **Count IV**: Negligent Misrepresentation against the Kornfeld Defendants by the Plaintiffs who purchased securities from the Kornfeld Defendants, namely Honig, Lippman and Hertvik.

1

- **Count V**: Negligent Misrepresentation against the Klager Defendants by Plaintiff Roy who purchased securities from the Klager Defendants.

- **Count VI**: Negligent Misrepresentation against the Knowles Defendants by Plaintiff Nanavaty, who purchased securities from Knowles.

- **Count VII**: Breach of Fiduciary Duty against the Kornfeld Defendants by Plaintiffs Honig, Lippman and Hertvik, who purchased securities from the Kornfeld Defendants.

- **Count VIII**: Breach of Fiduciary Duty against Klager Defendants by Plaintiff Roy, who purchased securities from the Klager Defendants.

- **Count IX**: Breach of Fiduciary Duty against the Knowles Defendants by Plaintiff Nanavaty, who purchased securities from the Knowles Defendants.

- **Count X**: Aiding and Abetting Breach of Fiduciary Duty Against all Defendants by All Plaintiffs.

- **Count XI**: Sale of Unregistered Securities in Violation of Chapter 517, Florida Statutes against the Kornfeld by Plaintiffs Honig, Lippman and Hertvik, who purchased securities from the Kornfeld Defendants.

- **Count XII**: Sale of Unregistered Securities in Violation of Chapter 517, Florida Statutes against the Klager Defendants by Plaintiff Roy, who purchased securities from the Klager Defendants.

- **Count XIII**: Civil Conspiracy against all Sales Agent Defendants by All Plaintiffs.

- **Count XIV**: Vicarious Liability against all Corporate Defendants by All Plaintiffs.

*See* FAC at 34-56.

The moving Defendants now seek to evade the consequences of their misconduct by demanding the dismissal of the Amended Complaint on a variety of grounds, including that it fails state a cause of action under *Fed.R.Civ.P.* 12(b), constitutes a shotgun pleading, and fails to establish personal jurisdiction over certain of the Defendants.

However, the stream-lined Amended Complaint describes a simple scheme and civil conspiracy on the part of Woodbridge and its external Sales Agent Defendants that is indisputably unlawful and actionable in this Court. Indeed, not one of the moving Defendants dispute that they engaged in the sale of Woodbridge investments in exchange for commission-based compensation.

Nor do Defendants deny that they solicited either the Plaintiffs or putative class members to purchase Woodbridge investments utilizing the Woodbridge sales script, which Plaintiffs have sufficiently alleged was full of uniformly misleading statements and omissions.

As demonstrated herein, the Amended Complaint alleges ultimate facts demonstrating that each and every one of the Sales Agent Defendants shared a common purpose with Woodbridge and with one another in executing the design of the civil conspiracy at hand: the generation of substantial monies and commissions through the sale of Woodbridge notes and fund offerings to any investor susceptible to the Defendants' uniform misrepresentations and omissions.

Plaintiffs have stated valid causes of action against the named Defendants arising from their role and participation in the conspiracy, and the Defendants' various motions to dismiss should be rejected in their entirety and this case should proceed with discovery and to trial.

## MEMORANDUM OF LAW

### I.    Applicable Standard of Review.

In considering the Defendants' challenge to the sufficiency of the Amended Complaint under Rule 12(b)(6), the Court must accept as true all facts alleged in the light most favorable to the Plaintiffs and all reasonable inferences in the Amended Complaint must be drawn in the Plaintiffs' favor. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

Under the liberal notice pleading standards of Rule 8(a), all the Plaintiffs must do is set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). The Court's inquiry is limited to whether the Amended Complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). As such, "[t]he proper test is whether the complaint 'contains either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory.'" *Financial Sec. Assur. Inc., v. Stephens Inc.,* 500 F.3d

1276, 1282 (11th Cir. 2007). The threshold for withstanding a motion to dismiss based on a claim of inadequate pleading is "exceedingly low." *In the Matter of Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995).

Significantly, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, "[w]here there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Accordingly, a motion to dismiss should not be granted where, as here, the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556.

The detailed factual allegations in the Amended Complaint support a reasonable inference that Defendants are liable for the misconduct alleged and rise far above the level of mere speculation.

## II. The Amended Complaint States Causes of Action for Negligence and Negligent Misrepresentations in Full Compliance with Federal Rule of Civil Procedure 9(b) (Counts I – VI).

The Kornfeld, Klager, and Knowles Defendants argue that to the extent Plaintiffs' claims for relief are grounded upon allegations of fraud, including specifically their claims for negligence and negligent misrepresentation claims, they fail to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b).[1] The Defendants are incorrect. Counts I through VI of Plaintiffs'

---

[1] Other Defendants make the same Rule 9(b) argument to the extent the claims against them are premised on the Kornfeld, Klager and Knowles Defendants' negligence and negligent misrepresentations.

4

Amended Complaint adequately allege all of the elements of a common law negligent and negligent misrepresentation claim, including the existence of present and pre-existing misrepresentations and omissions of fact by the Kornfeld, Klager and Knowles Defendants relating to the Woodbridge note and unit offerings.

### A.     The Negligence Claims (Counts I – III).

In order to state a viable cause of action for negligence, Plaintiffs must allege facts demonstrating that (1) the defendant owed a duty towards the plaintiff; (2) a breach of that duty; and (3) damages proximately caused by the defendant's breach of the duty. *Clay Electric Co-op, Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003).

First, the Amended Complaint sufficiently alleges facts in Counts I through III to show that each of the Kornfeld (Count I), Klager (Count II) and Knowles (Count III) Defendants owed common law duties of care towards the respective Plaintiffs who purchased securities from them. Each Defendant is alleged to have been conducting business and holding themselves out to be investment advisors in connection with their solicitation and recommendation of Woodbridge investments. *See* FAC, ¶¶ 106-110; 115; 118; 145; 149; 153.

Second, Plaintiffs have adequately plead that the Kornfeld, Klager and Knowles Defendants breached their common law duties of care by utilizing the false and misleading Woodbridge sales script – which they knew or should have known was fraudulent had they performed adequate due diligence – to recommend and sell Woodbridge investments to Plaintiffs. FAC ¶¶ 111-112; 116; 119; 146; 150; 154.  Indeed, the Amended Complaint identifies detailed, specific "red flags" that alerted the Kornfeld, Klager and Knowles Defendants that the Woodbridge investments were fraudulent, unregistered securities, yet each one repeatedly disregarded those

warnings in their zeal to collect substantial commissions paid out of the Plaintiffs' retirement and investment funds.  FAC ¶¶ 146(a-e); 150(a-e); and 154(a-e).

Third, the Plaintiffs allege the Kornfeld, Klager and Knowles System Defendants' breach of their duties of care directly and proximately caused the Plaintiffs to sustain significant damages in the form of their lost investment and retirement funds.  *See* FAC, ¶¶ 147; 151; 155.

## B.    The Negligent Misrepresentation Claims (Counts IV – VI).

The elements of a claim for negligent misrepresentation are that (1) the defendant made a misrepresentation of material fact that they believed to be true but that was false; (2) the defendant should have known the misrepresentation was false; (3) the defendant intended to induce the plaintiff to rely upon the misrepresentation; and (4) the plaintiff was injured acting in justifiable reliance upon the misrepresentation.  *Visonic Sys. V. AT&T Dig. Life*, 971 F. Supp. 2d 1178, 1196 (S.D. Fla. 2013).

The Amended Complaint alleges in detail the numerous misrepresentations and omissions of fact the Kornfeld, Klager and Knowles Defendants utilized to foist Woodbridge investments upon the Plaintiffs.  Notably, the following explicit misrepresentations and omissions are alleged:

- The FPCMs used bona fide third-party borrowers who were in need of hard-money loans from Woodbridge, when in fact almost all the borrowers were companies owned and controlled by Shapiro with no source of income and who never made any loan payments;

- The FPCM investors would be paid using the interest from Woodbridge's loans to third-party borrowers, when in fact existing investors were paid almost exclusively from the funds of new investors;

- The Fund Offerings would be funded in part by properties that Woodbridge would purchase to develop and sell for a profit, when in fact little or no development ever occurred, with many properties sitting undeveloped as vacant lots;

- The FPCMs and Fund Offerings were unregistered securities, yet the Kornfeld, Klager and Knowles System Defendants did not make any effort to determine whether an investor was accredited or sophisticated; and

- Woodbridge claimed it was paying commissions to "licensed broker/dealers," but the Kornfeld, Klager and Knowles System Defendants were not registered with any regulatory agency yet received commissions from Woodbridge.

FAC ¶¶ 146; 150; 154; 157; 158; 162; 163; 167; and 168.

Plaintiffs allege that the Kornfeld, Klager and Knowles Defendants intended that their misrepresentations induce the Plaintiffs to purchase Woodbridge investments, by alleging that these Defendants had a direct pecuniary interest in generating commissions from each new investor.  *See* FAC, ¶¶ 159; 164; 169.

Lastly, Plaintiffs adequately allege that they justifiably relied on the misrepresentations of the Kornfeld, Klager and Knowles System Defendants, and suffered significant damages as a result.  FAC, ¶¶ 160; 165; 170.

**C.      Plaintiffs' Allegations Satisfy Rule 9(b).**

Plaintiffs have plainly stated actionable claims for negligence and negligent misrepresentations against the Kornfeld, Klager and Knowles Defendants.  Defendants' argument that the Amended Complaint somehow fails to detail the precise content of each of the Defendants' sales presentations and pitches is baseless.  The Defendants are alleged to have employed uniform misrepresentations and omissions as part of their fraudulent scheme, and that does not render their misconduct any less actionable.  Nor does it evidence a lack of particularity in the well-pled allegations supporting each individual Plaintiffs' claims.  Rather, as discussed below, the fact that each Plaintiff was solicited to invest in the Woodbridge notes and/or units through the same exact false representations and omissions gives rise to an even greater inference that Defendants were engaged in a civil conspiracy and fraudulent investment scheme directed at members of the public in general and the individual Plaintiffs in particular.

Defendants' objection that Plaintiffs have failed to plead the exact date, place and times of the Kornfeld, Klager and Knowles Defendants' misrepresentations and omissions is equally unavailing.  Contrary to what Defendants would have the Court believe, Rule 9(b) does not require that "every material detail of the fraud such as date, location, and time" be expressly plead, but instead allows plaintiffs to use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  Here, Plaintiffs have delineated to the best of their knowledge the circumstances by which they were solicited in virtually identical fashion by the Kornfeld, Klager and Knowles Defendants to invest in Woodbridge notes and units through the false and misleading representations and omissions outlined above.  *See, e.g.*, FAC ¶¶ 110-112; 115-116; 118-119.

For example, Plaintiffs Paul and Carla Honig specifically allege that they were targeted, solicited and induced to invest in Woodbridge investments by the Kornfeld Defendants after attending the Ferne Kornfeld Course.  FAC ¶¶ 110-111.  Plaintiffs Honig, Lippman and Hertvik allege in detail that the Kornfeld Defendants utilized the false and misleading Woodbridge sales script to recommend and sell them Woodbridge investments.  *Id.* at ¶ 112.  Further, Plaintiffs allege that the Kornfeld, Klager and Knowles mischaracterized the dispositions of regulatory actions against Woodbridge by claiming it was exonerated of any wrongdoing or fraudulent activity, which they knew or should have known were false.  *Id.* at ¶¶ 132-135.

"[I]n applying Rule 9(b), courts should be 'sensitive' to situations in which 'sophisticated defrauders' may 'successfully conceal the details of their fraud.'"  *Id.* (quoting *Burlington Coat*, 114 F.3d at 1418).  Thus, "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed."  *Id.*  Thus, to the extent that Defendants contend there are additional details relating

to the sale of unregistered securities to Plaintiffs not delineated in the Complaint, that argument fails. Such additional facts have been concealed from the Plaintiffs by the Defendants or are uniquely within either the Defendants' knowledge or control. Kornfeld, Klager and Knowles Defendants and/or Woodbridge have exclusive access to and possession of critical information and documentation relating to the Woodbridge investments, including information relating to the exact date, time and manner of the Defendants' solicitations and Plaintiffs' resulting investments in Woodbridge's offerings.

The allegations in the Amended Complaint provide Defendants with more than adequate notice of both the general content of the misrepresentations and omissions at issue as well as the essential factual background of their alleged negligence and negligent misrepresentations. The allegations thus satisfy the quintessential "newspaper story" litmus test (*i.e.,* who, what, when, where and how) required by Rule 9(b). *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999).

The Kornfeld, Klager and Knowles Defendants' claim that the Amended Complaint fails to adequately allege that they acted knowingly and intentionally is similarly devoid of merit. The Amended Complaint both generally avers the Defendants' scienter and also includes ultimate facts that demonstrate the Defendants' motive and opportunity to commit negligence and misrepresentations and give rise to a strong inference of intent. *See* Amended Complaint, *Infra*.

In fact, Plaintiffs specifically allege that the Kornfeld, Klager and Knowles Defendants not only utilized the Woodbridge Sales Script that they knew or should have known was false and misleading, but also that they intentionally ignored and disregarded blatant red flags relating to the Woodbridge offerings so that these Defendants could continue to reap illicit commissions, including knowledge that the offerings were unregistered securities yet the Defendants were not

9

required to make any effort to determine whether an investor was accredited or sophisticated, and the fact that the offerings claimed that Woodbridge was paying commissions to "licensed broker/dealers," but the Kornfeld, Klager and Knowles System Defendants knew they were not properly licensed or registered to receive commissions from Woodbridge.  FAC ¶¶ 146(a-e); 150(a-e); and 154(a-e).  If these allegations do not give rise to a strong inference of Defendants' scienter, it is difficult to imagine what would.

In short, the purpose of the Rule 9(b) heightened pleading standard is that it "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).  Plaintiffs' negligence and negligent misrepresentation claims provide Defendants with more than sufficient notice of the "precise misconduct" with which they are charged, and they cannot be described as lacking in well-pled factual support.  Defendants' Motions should accordingly be denied.

## III.   The Amended Complaint States Causes of Action for Breach of Fiduciary Duty Against the Kornfeld, Klager and Knowles Defendants (Counts VII-IX).

Defendants argue that the Amended Complaint fails to state a cause of action for breach of fiduciary duty.  Not so.  A "fiduciary relation exists between two persons when one of them is under a duty to act for ... the benefit of another upon matters within the scope of that relation." *Doe v. Evans,* 814 So.2d 370, 374 (Fla. 2002) (quoting *Restatement (Second) Torts § 874* (1979)).

Significantly, Florida law recognizes the existence of implied fiduciary relationships which are "are premised upon the specific factual situation surrounding the transaction and the relationship of the parties" and exist where "confidence is reposed by one party and a trust accepted by the other." *Hogan v. Provident Life & Accident Ins. Co.,* 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009).  This is particularly true when the person is entrusted with confidential data,

such as an investor's financial circumstances, net worth and other information regarding their retirement and investment funds.  *Gracey v. Eaker,* 837 So. 2d 348, 354 (Fla. 2002).

The Amended Complaint includes allegations of sufficient ultimate facts giving rise to the existence of an express and/or implied fiduciary relationship with the Kornfeld, Klager and Knowles Defendants.  Plaintiffs allege that each of these Defendants conducted business and held themselves out to be experienced investment advisors in connection with their solicitation and recommendation of Woodbridge investments.  FAC ¶¶ 106-110; 115; 118; 145; 149; 153; 172; 177; 182.  Plaintiffs respectively allege that the Kornfeld, Klager and Knowles Defendants advised them on the suitability of the Woodbridge investments, and that each Plaintiff reposed their trust and confidence in the respective Defendants that they dealt with, which Defendants accepted.  *Id.* ¶¶ 172; 177; 182.

Plaintiffs also specifically allege that the Kornfeld, Klager and Knowles Defendants breached their fiduciary duties by failing to conduct adequate due diligence into the unregistered Woodbridge securities they sold to Plaintiffs and by failing to disclose that they were not registered with the SEC or any other regulatory agency.  *Id.* ¶¶ 172-73; 178-79; 183-84.  Finally, the Plaintiffs allege that they sustained significant damages (*i.e.,* in the form of their now defaulted Woodbridge notes and fund offerings) as a direct and proximate result of these Defendants' breaches of their fiduciary duties.  *Id.* ¶¶ 175; 180; 185.

Plaintiffs have therefore pled all of the elements of their breach of fiduciary duty claims with sufficient supporting ultimate facts.  To the extent the Court determines that Rule 9(b) applies to the Plaintiffs' breach of fiduciary duty claims in Counts VII-IX, this foregoing analysis demonstrates that those claims satisfy the Rule 9(b) particularity requirements.  Defendants' Motions to Dismiss Counts VII-IX of the Amended Complaint must be denied.

IV.   **The Amended Complaint States a Claim for Aiding and Abetting Breach of Fiduciary Duty (Count X).**

The Court should reject the Sales Agent Defendants' related argument that Plaintiffs have failed to state a viable claim for aiding and abetting breach of fiduciary duty in Count X.

As Defendants acknowledge, to establish a cause of action for aiding and abetting breach of fiduciary duty the Amended Complaint must allege (1) the existence of a duty on the part of the primary wrongdoer; (2) a breach of that duty; (3) knowledge of the breach of the alleged aider and abettor, and (4) the aider and abettor's substantial assistance and encouragement of the wrongdoing. *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991). Defendants do not appear to seriously contend that Plaintiffs have failed to satisfy the first two prongs of this standard by asserting the existence and breach of a fiduciary duty by Woodbridge's CEO, Shapiro, in selling Plaintiffs promissory notes and fund offerings pursuant to false offering materials. *See* FAC, ¶¶ 187-190.

Defendants instead object that the Amended Complaint fails to allege facts evidencing their knowledge of Shapiro's breach of his underlying fiduciary duties or the Defendants' substantial assistance and encouragement of the wrongdoing. However, the Amended Complaint is replete with factual allegations from which a jury could find or infer the Defendants had actual knowledge or at least a requisite general awareness of, and substantially assisted in, Shapiro's breaches of fiduciary duty. As detailed in Section B above, each of the Sales Agent Defendants agreed to associate with Shapiro and his company and to utilize the Woodbridge sales script to pitch Woodbridge's note and fund offerings as "low-risk, high-yield investments backed by high interest rate loans. FAC ¶¶157(a-c); 158; 162(a-c); 163; 167(a-c); and 168. Plaintiffs also explicitly allege that the Sales Agent Defendants knew the Woodbridge sales script utilized to hawk Woodbridge's investments was false and misleading. *Id.* ¶¶ 111-112; 116; 119; 146; 150; 154. The Amended

Complaint further alleges detailed "red flags" that must have placed the Sales Agent Defendants on notice that the Woodbridge investments they were marketing and selling were at a minimum unregistered securities, but that the Defendants intentionally ignored these red flags so that they could receive substantial commissions from the investor's funds.  FAC ¶¶ 146(a-e); 150(a-e); and 154(a-e).

Plaintiffs have similarly pled facts supporting their contention in Paragraph 191 of the Amended Complaint that the Sales Agent Defendants substantially assisted in Shapiro's breaches of fiduciary duty.  Plaintiffs expressly aver that because Woodbridge required the continuous infusion of new funds from investors to keep the scheme afloat, Shapiro engaged and depended on a network of several hundred external sales agents – including the Sales Agent Defendants named in this action – to solicit investments from the general public through television, radio, and newspaper advertising, cold calling, social media, websites, seminars, and in-person presentations. *See* FAC, ¶¶ 80-82.  Plaintiffs thus allege the Kornfeld, Klager, Knowles and other Sales Agent Defendants substantially aided and abetted Shapiro's breach of fiduciary duty by providing a constant and significant source of investor funds, which in turn allowed Shapiro to continue to abuse his fiduciary duties to Plaintiffs and other putative class plaintiffs in Florida and throughout the country.  FAC ¶¶ 114, 117 120-121.

The Eleventh Circuit Court of Appeal has previously held that similar factual averments are sufficient to state a claim for aiding and abetting breach of fiduciary duty.  *See Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985) (affirming that a defendant may be held liable as an aider and abettor where it had a general awareness that its role was part of an overall activity that is improper and if the defendant knowingly and substantially assisted in the violation).  Here, none of the named Sales Agent Defendants deny (nor can they) that they were

13

associated with Woodbridge as external sales agents and that they played a role in Shapiro's overall activity in marketing and selling the Woodbridge investment products. Despite the Sales Agent Defendants' self-serving (and factually implausible) claims that they lacked knowledge, or even a general awareness, of Shapiro's wrong-doing, the facts alleged in the Amended Complaint establish a basis upon which the court or a jury could determine that the Sales Agent Defendants indeed possessed the requisite knowledge or general awareness.[2]

V.     **Plaintiffs Alleged A Cause of Action Under Section 517.211, Because the Woodbridge Investments are "Securities" (Counts XI, XII).**

Counts XI and XII of the Amended Complaint assert claims against the Kornfeld and Klager Defendants under Florida Securities and Investor Protection Act (the "Florida Act") Section 517.211, Florida Statutes, which provides a private right of action for violations of section 517.07, Florida Statutes.[3]  Pursuant to Section 517.07 of the Florida Act, "[i]t is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state" unless the security or transaction is "exempt" under Chapter 517, or unless the security is "registered pursuant to this chapter."  Section 517.211 renders jointly and severally liable each person making the sale "and every director, officer, partner or agent of or for the seller if the director, officer, partner or agent *has personally participated or aided in making the sale*."  (Emphasis added.)

A defendant who participates or aids in the sale of an unregistered security is strictly liable to the purchaser for rescission or damages under section 517.211.  *Musolino v. Yeshiva Machzikei*

---

[2]  As discussed further in Section VII below, it is important to remember that Plaintiffs are not required to allege facts showing that Defendants had actual knowledge or a general awareness that Shapiro and Woodbridge were engaged in and conducting a Ponzi scheme, as Defendants incorrectly imply.  Rather, the requisite knowledge and intent merely relates to the Defendants' knowledge or a general awareness that Shapiro was breaching his fiduciary duties by promoting the sale of unregistered securities by and through the use of uniformly misleading statements and omissions.

[3]  Plaintiff Hemant Nanavaty intends to seek leave of Court to assert a similar claim against the Knowles Defendants in a future pleading after the Court has addressed and resolved the pending motions.

*Hadas Belz*, 137 F. App'x 321, 323 (11th Cir. 2005).  The Kornfeld and Klager Defendants are clearly alleged to be agents of Woodbridge who "personally participated or aided in making the sale" of Woodbridge securities.

Defendants argue that the Woodbridge First Position Commercial Mortgages ("FPCM") notes are not securities.  Defendants are wrong as a matter of fact and law.[4]  The Supreme Court has long held that a "note" such as the Woodbridge FPCM is presumed to be a security.  *Reves v. Ernst & Young*, 494 U.S. 56 (1990).  Moreover, the Florida Act defines a "security" to include a note.  *See* Fla. Stat. § 517.021(22).  Defendants can only rebut this presumption if the FPCM notes qualify as one of the instruments the Supreme Court has specifically identified as *not* being a security.  *Reves*, 494 U.S. at 65; *SEC v. Levin*, 2014 WL 11878357, *9 (S.D. Fla. Oct. 6, 2014); *see also* 15 U. S. C. § 78c(a)(10) (defining a note as a security but excluding any note which has a maturity not exceeding nine months, in contrast to the 12-18 month Woodbridge notes).  For the purposes of this Court's analysis, a note that is not among the exempt instruments listed in *Reves* is a security unless it bears a "strong family resemblance" to the non-security notes identified in the opinion.  *Reves*, 494 U.S. at 64-65; *Levin*, 2014 WL 11878357 at *9.

The Supreme Court has established a four-factor resemblance test to determine whether a note is a security: (1) the motivations of the buyer and seller; (2) the plan of distribution; (3) the reasonable expectations of the investing public; and (4) the existence of an alternate regulatory regime. *See id*. at 66-67.  The Woodbridge FPCM notes fail this test and they are deemed to be securities.

---

[4] The SEC has also concluded and alleged that Woodbridge's FPCM notes constitute securities in its related action pending before this Court, *SEC v. Robert H. Shapiro, Woodbridge Group of Companies, LLC, et al*., No. 17-24624 (S.D. Fla.) (the "<u>SEC Action</u>").  The SEC's Amended Complaint notes that at least six states (California, Massachusetts, Texas, Arizona, Pennsylvania, and Michigan) have determined the Woodbridge FPCM notes to be unregistered "securities."  *See* SEC Action, No. 17-24624, D.E. 147 ¶ 39.

A.      **The First *Reves* Factor.**

The first *Reves* factor examines the transaction "to assess the motivations that would prompt a reasonable seller and buyer to enter into it." *Reves*, 494 U.S. at 56. The inquiry is whether the motivations are investment – which suggests a security – versus a commercial or consumer – which suggests a non-security. *See Pollack v. Laidlaw Holdings, Inc.*, 27 F.3d 808, 812 (2d Cir. 1994) (holding that mortgage participations were securities under *Reves*). Here, the Plaintiffs were unquestionably motivated to invest in Woodbridge's FPCM notes by the high rate of return (5% to 8% annual interest) offered. FAC ¶ 74. This fact is borne out by the Sales Agent Defendants' representations that the FPCM investments were "low-risk, ***high-yield investments*** backed by high interest rate loans made to commercial borrowers." FAC ¶¶ 2, 6 (emphasis added). Where the buyer is primarily motivated by the profit the note is expected to generate, it is likely to be a security. *Reves*, 494 U.S. at 66.

Importantly, as Defendants acknowledge, the raising of money "for the general use of a business enterprise or to finance substantial investments" is indicative of an investment motivation and thus a security. *See Reves*, 494 U.S. at 66; *Pollack*, 27 F.3d at 812-13. This factor is plainly satisfied because Woodbridge used the funds raised from the Plaintiffs and other investors to pay sales commissions and to provide loans to third-party borrowers (albeit the majority of which were entities that were actually owned or controlled Shapiro). FAC ¶¶76-78; 83. The Kornfeld and Klager Defendants' assertion that the Woodbridge FPCM's were merely to facilitate the purchase or sale of a minor asset, to correct for cash-flow difficulties or advance some legitimate commercial or consumer purpose, is an absurd sham. The Court's determination of whether the FPCMs are securities is based on the reality of the transaction, not false statements made to solicit investors. *See SEC v. Wallenbrock*, 313 F.3d 532, 539 (9th Cir. 2002) (rejecting argument that

16

collateralized notes were not securities when "the so-called collateralization appears to be a fiction").

    **B.**    **The Second *Reves* Factor.**

    The second factor under the *Reves* decision is whether there is "common trading for speculation or investment" which is satisfied when the notes are "offered and sold to a broad segment of the public." *Reves*, 494 U.S. at 68; *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1287 (11th Cir. 2007). As expressly alleged in the Amended Complaint, the Woodbridge FPCM notes were sold to Plaintiffs and thousands of other investors nationwide who invested over a billion dollars. FAC ¶¶ 9; 72. To facilitate its fraudulent scheme to sell unregistered securities, Woodbridge employed a nationwide network of internal and external sales agents and armed them with uniform, scripted information and sales materials (the "Woodbridge sales script") to solicit the general public through television, radio, and newspaper advertising, cold calling, social media, websites, seminars, and in-person presentations. *Id.* ¶¶ 80-85.

    This widespread distribution of the FPCM notes to such a vast audience of potential investors with no limitations or restrictions – basically any member of the public with the money to buy them – is the hallmark of a securities offering, and not a typical borrower/lender relationship. *See Wallenbrock*, 313 F.3d at 539 (notes sold to over 1,000 investors in at least 25 states constituted broad segment of public); *Wright v. Downs*, 1992 WL 168104, at *3 (6th Cir. July 17, 1992) (notes sold to 200 investors constituted broad segment); *see also Deal v. Asset Mgmt. Grp.* 1992 WL 212482, at *4 (N.D. Ill. Aug. 28, 1992) (holding that just six unrelated investors constituted broad segment); *SEC v. Thompson*, 732 F.3d 1151, 1165 (10th Cir. 2013) (noting that seller "sought to expand its distribution to anyone interested who had $100,000 to invest . . . and made its instruments available to anyone willing to pay.").

C.    **The Third *Reves* Factor.**

The third factor in *Reves* requires the Court to analyze the "reasonable expectations of the investing public", *i.e.*, the length and characteristics of the note and whether there is a valuable return on an investment.  *See*, *e.g., Stoiber v. SEC*, 161 F.3d 745, 751 (D.C. Cir. 1998) ("Whether notes are reasonably perceived as securities generally turns on whether they are reasonably viewed by purchasers as investments.").   Once again, this factor dictates a finding that the FPCM notes were unquestionably securities, as Woodbridge and its sales agents such as Kornfeld and Klager repeated marketed the notes as short-term, low-risk, high-yield investments that were held by Plaintiffs and thousands of other individuals who plainly viewed and believed the FPCMs notes to be passive investments generating safe returns.  FAC ¶¶ 2, 76, 87-93.

D.    **The Fourth *Reves* Factor.**

Finally, the Court must consider whether the Woodbridge FPCM notes contain any risk-reducing factors to keep the notes from "escap[ing] federal regulation entirely," thus indicating that the notes are not in fact securities. *Reves*, 494 U.S. at 69.  Defendants have not and cannot identify any risk-reducing factors that would remotely qualify the FPCM notes as non-securities. It is undisputed that Woodbridge and Shapiro did not use investors' funds as promised, but instead operated the company as a Ponzi scheme by utilizing funds from new investors to make interest payments to previous investors. Such existing non-securities regulations were clearly inadequate to reduce the risks associated with the notes.  *See* FAC ¶ 78; *see also Pollack*, 27 F.3d 808 (holding state mortgage regulations inadequate); *McNabb*, 298 F.3d 1126 (holding that state property laws are "not the type of regulatory schemes contemplated by the [*Reves*] test").

It is also significant that the FPCM notes did not involve one-on-one transactions, but rather instead were comprised of large pools of unrelated individual investors, many of whom

were elderly and unsophisticated and had no experience in the business of providing mortgages or consumer lending.  FAC ¶¶ 76; 218.  The Plaintiffs and other Woodbridge FPCM note investors were thus entirely dependent upon the due diligence and limited information (or no information) provided by Woodbridge and its sales agents such as Kornfeld and Klager, in stark contrast to a commercial lender or bank who deals directly with the promisor and can protect itself against loss.  *See Great Western Bank and Trust v. Kotz*, 532 F.2d 1252, 1262 (9th Cir. 1976).

The Supreme Court's summary of its analysis in *Reves* sufficiently demonstrates why it is equally applicable to the Woodbridge FPCM notes at issue here:

> Applying the family resemblance approach to this case, we have little difficulty in concluding that the notes at issue here are "securities." . . . Nor does an examination of the four factors we have identified as being relevant to our inquiry suggest that the demand notes here are not "securities" despite their lack of similarity to any of the enumerated categories. The Co-Op *sold the notes in an effort to raise capital for its general business operations, and purchasers bought them in order to earn a profit in the form of interest*.  Indeed, one of the primary inducements offered purchasers was an interest rate constantly revised to keep it slightly above the rate paid by local banks and savings and loans. From both sides, then, *the transaction is most naturally conceived as an investment in a business enterprise rather than as a purely commercial or consumer transaction*.

494 U.S. at 67-68.

In short, the Defendants have not come close to carrying their burden of overcoming the presumption that the FPCM promissory notes are securities and thus subject to state and federal securities regulation. The Woodbridge FPCM promissory notes do not fall into any category of non-security notes recognized in *Reves*, and application of the family resemblance test confirms that they are securities. As such, the FPCMs notes offered by Woodbridge are securities within the meaning of sections 517.07 and 517.211, Florida Statutes.

## VI.    Plaintiffs Have Properly Pled Their Claim for Civil Conspiracy (Count XIII).

The Sales Agent Defendants have each challenged the sufficiency of the Plaintiffs' claim for civil conspiracy in Count XIII of the Amended Complaint, pursuant to which each of the co-

conspirator Sales Agent Defendants is jointly and severally liable for the damages caused by the conduct of the other members of the conspiracy.  Under the well-pled facts and controlling law, however, the Plaintiffs have stated a viable civil conspiracy claim.

Under Florida law, a claim for civil conspiracy requires allegations of (1) each defendant's agreement with at least one other conspirator; (2) to commit unlawful acts or to use unlawful means; (3) through each defendant's commission of at least one overt act; and that (4) results in damages.  *Charles v. Fla. Foreclosure Placement Ctr.,* 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008).  Thus, "an actionable conspiracy requires an actionable underlying tort or wrong." *Bray & Gillespie Mgmt. LLC,* 527 F. Supp. 2d at 1370-71 (quoting *Fla. Fern. Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty.,* 616 So.2d 562, 565 (Fla. 2d DCA 1993)).   Here, Plaintiffs have satisfied this element of their conspiracy claim by sufficiently alleging actionable claims for negligence, negligent misrepresentation, breach of fiduciary duty and sale of unregistered securities against the co-conspirator Kornfeld, Klager and Knowles Defendants.  *See* FAC Counts I-IX, XI-XII.

Plaintiffs have likewise satisfied their burden of alleging that the Sales Agent Defendants each reached and entered into an express or tacit agreement with at least one or more of the other co-conspirators – namely Robert Shapiro and Dayne Roseman (Woodbridge's CEO and Managing Director, respectively) – to pursue a course of concerted, unlawful conduct in exchange for substantial compensation.  *See* FAC ¶¶60-61; 219.

Defendants' chief argument is that the civil conspiracy claim consists of conclusory allegations that fail to establish an agreement between the Sales Agent Defendants and their alleged co-conspirators.   However, the law permits Plaintiffs to prove the existence of a

20

conspiracy through facts and circumstances indicating such an agreement to commit unlawful acts, and there is ample evidence of such a conspiracy here.

Because persons engaging in unlawful conduct together do not advertise their intentions, often take steps to avoid detection, and presumably anticipate that their conduct may later be scrutinized, the requisite "agreement" or "meeting of the minds" may rest upon alleged facts, circumstances, and sequences of events suggesting the existence of a conspiracy. *Donofrio v. Matassini,* 503 So.2d 1278, 1281 (Fla. 2d DCA 1987); *United States v. Toler,* 144 F.3d 1423, 1426 (11th Cir. 1998); *Grunewald v. United States,* 353 U.S. 391, 402 (1957).  As the Eleventh Circuit has observed, "[w]e recognize that it is only in rare cases that a plaintiff can establish the existence of a conspiracy by showing an explicit agreement; most conspiracies are inferred from the behavior of the alleged conspirators."  *Seagood Trading Corp. v. Jerrico, Inc.,* 924 F.2d 1555, 1573 (11th Cir. 1991); *see also Charles,* 988 So.2d at 1159-60 (finding that "[t]he existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence"); *United States v. Masonite Corp.,* 316 U.S. 265, 275-76 (1942) ("It is elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators. . . . Acceptance by competitors, without previous agreement, of an invitation to participate in a plan, the necessary consequence of which, if carried out, is [unlawful conduct], is sufficient to establish an unlawful conspiracy"); *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 156-57 (1970) ("sequence of events created a substantial enough possibility of a conspiracy to allow [plaintiff] to proceed to trial ... [since] the noncircumstantial evidence of the conspiracy could only come from adverse witnesses").  Factual allegations suggesting "a unity of purpose or a common design and understanding" will support a conspiracy claim. *Seagood Trading Corp., supra,* 924 F.2d at 1573.

For example, in *Primerica Financial Services, Inc. v. Mitchell,* 48 F. Supp. 2d 1363 (S.D. Fla. 1999), the defendant contended that plaintiffs had not adequately alleged "the agreement that existed between the alleged co-conspirators, the nature, purpose and scope of the agreement, the role of each alleged co-conspirator," or the overt acts that had been committed.  Rejecting this challenge, the court held:

> Plaintiffs' pleading is sufficient to put Defendant on notice as to the nature of the alleged conspiracy. Plaintiffs have named the alleged conspirators; have alleged certain overt acts performed by Defendant and the alleged co-conspirators in furtherance of the conspiracy; that the intent of the conspiracy was to interfere illegally with Plaintiffs' business relationships; and that Plaintiffs have suffered financial injury. The Court finds that Plaintiffs' allegations are sufficiently specific to put Defendant on notice as to the nature of the conspiracy alleged.

*Id.* at 1369-70 (record citations omitted).  Plaintiffs' allegations of conspiracy here are at least detailed as the conspiracy allegations in the complaint approved by this Court in *Primerica.*

Also, there is no requirement that each of the named Sales Agent Defendants agreed to join the conspiracy simultaneously, or that they each confirmed their agreement with every member of the group. To the contrary, conspiracy "does not require proof that 'each conspirator agreed with every other conspirator ... [or] was aware of all the details of the conspiracy.' Indeed, participation in a conspiracy may be inferred merely from acts which furthered its object." *Liquidation Comm '71 of Banco Intercontinental, S.A. v. Renta,* 530 F.3d 1339, 1353 (11th Cir. 2008).  Likewise, Plaintiffs are not required "to identify the exact dates or details of when a defendant or any conspirator joined or withdrew from a charged conspiracy." *United States v. Florida W. Intl Airways, Inc.,* No. 10-20864-CR, 2011 WL 8866021, at *4 (S.D. Fla. Sept. 13, 2011); *see also Regions Bank v. Kaplan,* No. 8:12-CV-1837-T-17MAP, 2014 WL 1292888, at *11 (M.D. Fla. Mar. 31, 2014) (holding that no proof was required that "each conspirator agreed with every other conspirator ... [or] was aware of all the details of the conspiracy"); *United States v. Starrett,* 55 F.3d 1525, 1544 (11th Cir. 1995) (finding that "the government

does not have to establish that each conspirator explicitly agreed with every other conspirator to commit the substantive RICO crime described in the indictment, or knew his fellow conspirators, or was aware of all the details of the conspiracy").

Furthermore, while some of the co-conspirator Sales Agent Defendants may have played a larger role than others (*i.e.*, some like Kornfeld and Knowles System were large producers, while other of the named Sales Agent Defendants only sold a handful of Woodbridge notes and units), ***each one*** is liable for the others co-conspirators' conduct regardless of their relative contributions. *See Hampton v. State,* 135 So. 3d 440, 442 (Fla. 5th DCA 2014) (upholding defendant's liability for his specific contribution to the conspiracy because "members of a conspiracy play different roles"). As such, "[a] conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy" . . . and instead "[t]he conspirator ***need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators***." *See Donofrio,* 503 So .2d at 1281 (emphasis added).

These legal points are critically important here, as Plaintiffs do not contend – and are not required to allege or establish as Defendants suggest – that the Sales Agent Defendants each entered into a direct agreement with one another (or with the Klager, Kornfeld and Knowles Defendants for that matter) to participate with the civil conspiracy. Rather, Plaintiffs explicitly allege that the genesis of the conspiracy occurred in 2012 when Shapiro and Roseman hatched a plan to recruit and compensate a network of external sales agents to solicit the purchase and sale of Woodbridge Investments from the investing public, including the Plaintiffs. *See* FAC ¶¶ 215-218. In this manner, each of the Sales Agent Defendants entered into an express or tacit agreement Woodbridge and its principal insiders – Shapiro and Roseman – to act as external sales agents and to engage in concerted, unlawful conduct in selling Woodbridge notes and fund offerings utilizing

the false and misleading "Woodbridge Sales Script" in exchange for substantial commissions pilfered from Plaintiffs and other investors.  *Id.*  ¶ 219.

These allegations establish the classic "hub and spoke" civil conspiracy, with Woodbridge, Shapiro and Roseman acting as the "hub" of the conspiracy and each Sales Agent Defendant serving as an essential "spoke" through which the unlawful acts and means were accomplished in Florida and nationwide.  *See* FAC, ¶¶ 215-220.  Despite the Defendants' collective efforts to confuse the issue, it is very important to note that the Amended Complaint does not claim – and thus is not required to allege facts establishing – that the Sales Agent Defendants knowingly agreed to join and participate in Woodbridge's Ponzi scheme.  Rather, what Plaintiffs allege is a related, but separate and independent, civil conspiracy between Woodbridge and the external Sales Agent Defendants by which they would raise investor funds for the company through the unlawful and improper sale of unregistered securities – *even if* the Sales Agent Defendants lacked actual knowledge that Woodbridge and Shapiro were using those funds to operate a fraudulent Ponzi scheme.  This is a critical distinction that makes a material difference in analyzing the sufficiency of Plaintiffs' civil conspiracy allegations.

And there is ample direct as well as circumstantial evidence identified in the Amended Complaint to support a finding that the Sales Agent Defendants agreed to join in and participate in that civil conspiracy, starting with the basic undisputed fact that each such Defendant accepted Woodbridge's invitation to act as a sales agent for the company and to market and promote Woodbridge's unregistered securities to largely elderly and unsophisticated investors, using the false and misleading Woodbridge sales script.   FAC ¶¶ 215-220*; see also Goin v. Comm 'n on Ethics,* 658 So.2d 1131, 1135-36 (Fla. 1st DCA 1995) (acknowledging that "[p]roof of knowledge or intent by circumstantial evidence is widely allowed" for conspiracy claims").  As for evidence of the motivation and incentive the Sales Agent Defendants had to agree to join the conspiracy

24

and commit overt acts of misconduct in furtherance of it, the Court need look no further than the approximate $64.5 million in sales-based commissions the Sales Agent Defendants and other external sales agents retained from the investor funds they raised. *Id.* at ¶ 83.

The Amended Complaint similarly alleges facts supporting the finding and inference that the Sales Agent Defendants knew of, and assented to, each other's existence, role and participation in the conspiracy by virtue of their individual sale of Woodbridge notes and units to investors through improper and unlawful means. *See Liquidation Comm 'n of Banco Intercontinental, S.A.,* 530 F.3d at 1353 (finding the "existence of an agreement, as well as its objective, may be inferred from circumstantial evidence demonstrating `that each defendant must necessarily have known that the others were also conspiring to participate in the same enterprise'"). Plaintiffs allege that Woodbridge jointly communicated with its Sales Agent Defendants on a regular basis; invited the Sales Agent Defendants to visit its headquarters and view its operations; and hosted lavish parties and events designed to pitch the Woodbridge investments and motivate and incentivize the Sales Agent Defendants' ongoing participation in the conspiracy. FAC ¶ 222. Woodbridge also established a program called "Pass It On," through which brokers were encouraged to refer the FPCM notes to their colleagues in return for 25 basis points on each FPCM note sold by a broker whom he or she referred. *Id.* ¶ 84.

In addition, even without the benefit of any discovery in this case, Plaintiffs have already identified documentary evidence of the conspiracy in the form of a May 4, 2016 email between Shapiro and Roseman lamenting the lack of new investor funds in which they reference and acknowledge their "team" of external sales agents and blame the lack of production on the fact that "our 3 main brokers Knowles [*i.e.*, Defendants Robbins, Leutz and Knowles Systems], live abundant [*i.e.*, Defendants Andrew and Paramount] and kornfeld [*i.e.*, Defendants Barry and Ferne Kornfeld] are all slow at the moment and it is effecting our numbers . . . ." *See* FAC ¶ 224. This

25

hard evidence pushes the Plaintiffs' civil conspiracy allegations far past the requisite "facial plausibility" for their claims of concerted misconduct and is sufficient standing alone to justify the denial of the Defendants' dispositive motions. *See Twombly*, 550 U.S. at 556.

The various Sales Agent Defendants' claim that they did not engage in any or all of the alleged misconduct transpiring in this District is of no moment. It is well-settled that there is no requirement that each defendant personally engage in or agree to pursue *all* of the tortious conduct committed in furtherance of the conspiracy. *See Regions Bank,* 2014 WL 1292888, at *2 (finding that defendant who had not personally committed one of the tortious acts was properly named as a defendant because "each conspirator need not participate in every stage of the conspiracy; a conspirator need only know of the scheme and assist it in some way to be held responsible for all of the acts of his coconspirators"); *Principal Life Ins. Co. v. Mosberg,* No. 09-22341-CIV, 2010 WL 473042, at *5 (S.D. Fla. Feb. 5, 2010) (same); *Coast Life Ins. Co. v. Life Brokerage Partners LLC,* No. 08-80897-CIV, 2009 WL 2957749, at *9 (S.D. Fla. Sept. 9, 2009) (noting that it is "unnecessary for each defendant charged with conspiracy to be accused of making misrepresentations as long as at least one co-conspirator committed such an overt act"); *Starrett,* 55 F.3d at 1544 (stating "[t]hat each conspirator may have contemplated participating in different and unrelated crimes is irrelevant."). Telling, none of the Sales Agent Defendants deny having engaged in the sale of unregistered Woodbridge securities to their own clients (whether in Florida or elsewhere), and it is that individual act in furtherance of the civil conspiracy that renders each Sales Agent Defendant a proper party Defendant in this this action.

Finally, contrary to the Sales Agent Defendants' contentions, each of them has properly been named as a participant in a single count for a single conspiracy, as opposed to asserting multiple, separate groups of conspirators and conspiracies. As the Eleventh Circuit confirmed in *United States v. Taylor*:

> In determining whether the government has proven multiple conspiracies or a single conspiracy, this Court considers three criteria: (1) the existence of a common goal, (2) the nature of the criminal scheme, and (3) the overlap of the participants in the various dealings of the conspiracy. In finding a single conspiracy, there is no requirement that each conspirator participated in every transaction, knew the other conspirators, or knew the details of each venture making up the conspiracy. ***"A single conspiracy may be found where there is a 'key man' who directs the illegal activities, while various combinations of other people exert individual efforts towards the common goal*.***"

17 F.3d 333, 337 (11th Cir. 1994) (citations omitted) (emphasis added); *accord Freyre v. Hillsborough Cty. Sheriffs Office,* No. 8:13-CV-02873-T-27, 2014 WL 6885913, at *11 (M.D. Fla. Dec. 5, 2014).

Just like in *U.S. v. Taylor*, each conspirator Sales Agent Defendant agreed to pursue the common goal of marketing and selling unregistered Woodbridge securities utilizing the false Woodbridge sales script. Shapiro and Roseman were at the center or "hub" of this entire scheme, which was being pursued across the country by the Sales Agent Defendants both large and small. As the case law teaches, it makes no difference that some members of the conspiracy played lesser roles than others. *Burger v. Hartley,* 896 F. Supp. 2d 1157, 1168-69 (S.D. Fla. 2012) (finding that "[t]o be held liable for the acts of all co-conspirators, each co- conspirator 'need only know of the scheme and assist in it in some way").

In short, this case involves a single conspiracy, and it is appropriate that it be prosecuted and tried in a single action and Count. Each and every one of the Sales Agent Defendants shared a common purpose with Woodbridge and with one another external sales agents in carrying the obvious design of the conspiracy: to generate substantial wealth and profits through the sale of Woodbridge notes and units to any unsuspecting investor they could find by engaging in uniform, widespread misrepresentations and omissions. *That* is the civil conspiracy alleged in this case, and it has been more than adequately pled.

For all of the foregoing reasons, Sales Agent Defendants' motions to dismiss Count XIII of the Amended Complaint should be denied.

27

## VII.    Plaintiffs' Vicarious Liability Claim Is Not Subject to Dismissal.

Plaintiffs' vicarious liability claims against the Corporate Defendants in Count XIV of the Amended Complaint pleads the facts necessary to support these corporate defendants' vicarious liability for the tortious conduct of their authorized agents.

The Amended Complaint explicitly alleges that the Kornfeld, Klager, Knowles and remaining Sales Agent Defendants were each employed by or affiliated with their respective Corporate Defendants during the time periods in question.   FAC ¶¶ 19-28; 32; 34; 36; 40; 42; 44; 54; 55; 57. The Amended Complaint further alleges that the Sales Agent Defendants were acting at all times within the course and scope of their actual or apparent agency with their respective Corporate Defendants. *Id.* These factual allegations are sufficient to state a claim and submit the question to the jury as to the Corporate Defendants' vicarious liability for the acts and omissions of their Sales Agent Defendants. *See Life Ins. Co. of N. Am. v. Del Aguila,* 417 So.2d 651, 652 (Fla. 1982) (corporation liable for tortious acts of officers and employees); *Winn & Lovett Grocery Co. v. Archer,* 171 So.2d 214, 219 (Fla. 1936) ("corporation is liable for all torts committed by its servants or agents the same as a natural person ... for the acts of its agents done by its authority, express or implied").

## VIII.   The Non-Resident Defendants Are Subject to Florida's Long-Arm Jurisdiction.

Defendants Douglas Andrew, Paramount Financial Services, Inc., Robert S. Davis, Jr., Tony MacKenzie, Paula Burke, Old Security Financial Group Corp., Jerry Davis Raines, David Ouelette, Shield Financial Group, Inc., Henry Wieniewitz, and Wieniewitz Wealth Management ("Non-Resident Defendants") have each challenged the Court's exercise of personal jurisdiction over them under Florida's Long-Arm Statute, claiming they have not engaged in any tortious conduct directed towards Florida residents.  These jurisdictional challenges fail on multiple fronts.

First, Plaintiffs have satisfied their threshold burden of establishing a *prima facie* case for the exercise of personal jurisdiction over the Non-Resident Defendants under Florida's long-arm statute, Fla. Stat. §48.193(1)(a), based on their participation in and commission of tortious acts in Florida by and through their Florida resident co-conspirator co-Defendants.

Second, it is black letter Florida law that participation in a conspiracy subjects all co-conspirators to personal jurisdiction in any state in which or toward which tortious acts were committed.  This is so because the acts of a conspirator in furtherance of a conspiracy are attributed to the other members of the conspiracy, thereby providing a basis for the exercise of long-arm jurisdiction.  *Nicholson v. Kellin,* 481 So. 2d 931, 935 (Fla. 5th DCA 1985) (holding that "[e]ach act done in pursuance of a conspiracy by one of several conspirators is an act for which each is jointly and severally liable"); *Hasenfits v. Secord,* 797 F. Supp. 958, 961 (S.D. Fla. 1989) (collecting cases where out-of-state defendants with no direct contacts with the forum state other than the in-state acts of their co-conspirators were subject to personal jurisdiction).  As such, each co-conspirator is the agent of every other co-conspirator and jointly and severally liable for his co-conspirators' conduct, *even* if the co-conspirator did not participate in every transaction, did not know every conspirator, and did not know the details of every aspect of the conspiracy.  *United Stales v. Taylor,* 17 F.3d 333, 337 (11th Cir. 1994).

Florida's long-arm statute thus allows courts to exercise personal jurisdiction over out-of-state conspirators.  *See Wilcox v. Stout,* 637 So. 2d 335, 337 (2d DCA 1994).  In relevant part, the statute states:

> A person … who personally or *through an agent* does any of the acts enumerated in this subsection thereby submits himself or herself … to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts … [c]ommitting a tortious act within this state.

29

Fla. Stat. § 48.193(1)(a)2 (emphasis added).  Under Florida's the long-arm statute, a defendant is subject to jurisdiction in Florida if (a) the complaint states a claim for conspiracy against the nonresident defendant, and (b) any member of the conspiracy committed tortious acts in Florida. *Wilcox,* 637 So. 2d at 337; *Platypus Wear, Inc. v. Clarke Model & Co.,* 515 F. Supp. 2d 1288, 1293 (S.D. Fla. 2007).  The Amended Complaint satisfies this standard and the evidence obtained thus far confirms the Plaintiffs' core allegations of the conspiracy's existence and reach into Florida, subjecting each of the nonresident co-conspirators specific personal jurisdiction.

The Non-Resident Defendants' objections that they did not personally commit any tort in Florida or participate in tortious conduct directed to Florida residents is therefore insufficient as a matter of well-settled law to secure their dismissal for lack of personal jurisdiction.  Rather, where, as here, "the plaintiff has successfully alleged that *any member* of [a] conspiracy committed tortious acts in Florida in furtherance of that conspiracy, *then all of the conspirators* are subject to the jurisdiction of Florida through its long-arm statute." *NHB Advisors,* 95 So. 3d at 448 (emphasis added) (citing *Wilcox,* 637 So. 2d at 337 and *Elandia Int'l, Inc. v. Ah Koy,* 690 F, Supp. 2d 1317, 1330 (S.D. Fla. 2010)).  In fact, Florida courts may exercise personal jurisdiction even if the alleged conspirator has no other connection to the state, thus rending the Non-Resident Defendants' specious "due process" and "lack of minimal contacts" objections superfluous.  *See Machtinger v. Inertial Airline Servs., Inc.,* 937 So. 2d 730, 734-36 (Fla. 3d DCA 2006).  To summarize, to establish co-conspirator personal jurisdiction, Plaintiffs need only properly plead the commission of a tort in or directed to Florida by the Florida co-conspirators in furtherance of the conspiracy.

For this same reason, the affidavits and declarations filed by the various Defendants in support of their jurisdictional challenges are immaterial and insufficient to shift the burden back

to the Plaintiff to prove sufficient jurisdiction by way of contesting affidavits or other sworn statements. *See Abramson v. Walt Disney Co.*, 132 Fed. Appx. 273, 276 (11th Cir. 2005). As the Eleventh Circuit held in *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1215 (11th Cir. 1999), conclusory denials of wrongdoing "although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction"). Moreover, *none* of the Non-Resident Defendants have submitted any affidavit or declaration by the Florida co-conspirator Defendants – Kornfeld, Klager and Knowles System – attesting they did not engage in the conduct Plaintiffs allege was tortious, *i.e.*, the marketing and sale of Woodbridge's unregistered securities through false and misleading misrepresentations. It is this tortious conduct within Florida that provides the nexus for the Court's exercise of personal jurisdiction over the Non-Resident Defendants.

The Non-Resident Defendants' affidavits and declarations similarly fail to dispute or deny that they were associated with Woodbridge and Shapiro and fail to deny that they engaged in the marketing and sale of Woodbridge notes and fund offerings to investors outside of Florida in furtherance of the civil conspiracy. This glaring omission is significant because Plaintiffs have properly alleged that the Non-Resident Defendants' sale of Woodbridge securities to investors outside of Florida constitutes an overt act in furtherance of the civil conspiracy, thus rendering them liable for the tortious conduct of their Florida co-conspirators.

The Non-Resident Defendants' generalized and conclusory statements in their affidavits and declarations that they did not commit any tortious acts in Florida or enter any conspiracy with the Florida resident Defendants to do so, or aid and abet any other Defendants' tortious conduct in Florida, are wholly insufficient to justify their dismissal based on lack of personal jurisdiction. Suffice it to say, Florida law does not permit tortfeasors to escape the jurisdiction of its courts by

denying, at the outset of a lawsuit, that they participated in the tortious conduct alleged in a complaint. *See, e.g., NHB Advisors, Inc. v. Czyzk,* 95 So. 3d 444, 446-47 (Fla. 4th DCA 2012) (rejecting a jurisdictional challenge to civil conspiracy claims premised on conclusory affidavits denying the defendants' participation in any wrongful or tortious conduct).

For example, in *Thorpe v. Gelbwaks,* 953 So. 2d 606 (Fla. 5th DCA 2007), a nonresident defendant challenged personal jurisdiction by denying in conclusory fashion that he participated in the tortious and deceptive conduct alleged in the complaint. In reversing the trial court's dismissal of the conspiracy claim, the appellate court concluded that the defendant's "denials of any wrongdoing ... constitute mere legal conclusions, not assertions of fact." *Id.* at 610. The court admonished that rather than relying upon conclusory denials set forth in *self-serving affidavits* attached to the motions to dismiss, the "trial court's focus should have been on whether the tort, ***as alleged,*** occurred in Florida, and not whether the [plaintiffs] ***proved*** that [the defendant] had actually committed a tort in Florida." *Id.* at 609 (emphasis supplied).

This approach to addressing the Non-Resident Defendants' jurisdictional challenges is perfectly appropriate and reasonable, as any other would essentially require Plaintiffs to prove their case at the pleadings stage. *See Walter Lorenz Surgical, Inc. v. Teague,* 721 So. 2d 358, 359 (Fla. 1st DCA 1998). The Eleventh Circuit has pointed out the folly in demanding that a plaintiff proffer actual evidence at the pleading stage establishing the commission of a crime in Florida:

> In order to determine whether a tort was *not* committed by the defendant, this Court would have to conduct a full-scale inquiry into the nature of the document taken, an interpretation of the contract, and a determination on the merits. A motion to dismiss for lack of personal jurisdiction does not require such an inquiry.

*Future Tech. Today, Inc. v. OSP Healthcare Sys.,* 218 F.3d 1247, 1250 (11th Cir. 2000); *see also Amerifactors Fin. Group,* 2013 WL 5954777, at *7 (finding that the defendant's affidavit denying third party had "the power or authority to enter into contracts" on behalf of defendant was a legal

conclusion that could not defeat personal jurisdiction); *AXA Equitable Life Ins. Co. v. Infinity Fin. Group, 17 C,* 608 F. Supp. 2d 1349 (S.D. Fla. 2009) (rejecting jurisdictional challenge to civil conspiracy claims despite the defendants' conclusory denials).

Where, as here, personal jurisdiction rests primarily upon the Non-Resident Defendants' joinder in a conspiracy that includes the commission of unlawful acts within this state, adjudication of the tortious and improper character of the defendants' conduct must await resolution at trial.  "In situations where the jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other."  *Sierra Equity Gip., Inc. v. White Oak Equity Partners, LLC,* 650 F. Supp. 2d 1213, 1223 (S.D. Fla. 2009).  Thus, courts have regularly held that "it is preferable that a decision on the jurisdictional facts be made at trial, where a plaintiff may present his case in a coherent, orderly fashion without the risk of prejudicing his case on the merits."  *Nissim Corp. v, ClemPlay, Inc.,* 351 F. Supp. 2d 1343, 1351 (S.D. Fla. 2004).  That is the exact case here, as this Court's jurisdiction is premised upon well-pled allegations of a conspiracy targeting Florida—allegations that can only be resolved fairly and appropriately through a trial.

## IX.    The Amended Complaint Is Not A Shotgun Pleading.

In a final effort to avoid responsibility for the Plaintiffs' investment losses, the Defendants have alternatively asserted the Amended Complaint constitutes an impermissible "shotgun pleading."[5]  While the Defendants quote the courts' general condemnations of shotgun pleadings, their argument is entirely without merit as applied to this specific case.  The Amended Complaint

---

[5]  Notably, most of the moving Defendants attacking the Amended Complaint as a shotgun pleading are non-resident sales agents who are only subject to only three counts, yet claim they are somehow unable to determine the nature and scope of the allegations and claims asserted against them.

is well-drafted, rationally organized, and properly tailored to advise each Defendant of the nature

the claims and allegations asserted against them.  The Amended Complaint is structured as follows:

- ¶¶ 1-11:          Summary of action and the claims.

- ¶¶ 12-18:        Allegations of the individual Plaintiffs' residence and their investments in Woodbridge notes and "fund equity units."

- ¶¶ 19-58:        Specific allegations of the twenty-two individual sales agent Defendants' residence and affiliation with the seventeen entity sales agent Defendants, and specific descriptions of the entity sales agent Defendants' citizenship.

- ¶¶ 59-65:        Allegations describing the auditor Defendant and the relevant non-party Woodbridge insiders.

- ¶¶ 66-71:        Allegations of jurisdiction, venue, and satisfaction of conditions Precedent.

- ¶¶ 72-143       Factual Allegations Common to All Counts, including:
  - ¶¶ 72-78:     Allegations describing the Woodbridge scheme and conspiracy.
  - ¶¶ 79-93:     Allegations describing the Woodbridge civil conspiracy;
  - ¶¶ 94-102:   Allegations describing the roles of the Woodbridge insiders;
  - ¶¶ 103-143: Allegations describing the Defendants' participation in the Woodbridge scheme and civil conspiracy; *including*:

    - ¶¶ 104-120: Allegations describing each of the *Florida* sales agent Defendants' participation in the Woodbridge scheme and civil conspiracy.

    - ¶ 121: Allegations describing the *non-resident* sales agent Defendants' participation in the Woodbridge scheme and civil conspiracy.

    - ¶¶122-129:  Allegations describing the Defendant GBH' participation in the Woodbridge scheme and civil conspiracy;

    - ¶¶130-137: Allegations regarding all co-conspirator sales agent Defendants' misrepresentations regarding Woodbridge regulatory proceedings; and

- ¶¶138-143: Class action allegations.

- Counts I – IX: Claims Against the Kornfeld, Klager and Knowles System Defendants, but only by the Plaintiffs who purchased Woodbridge securities through each Defendant.

- Count X: Claims Against All Sales Agent Defendants

- Counts XI-XII: Claimants Against Kornfeld and Klager Defendants under Section 512.211 by the Plaintiffs who purchased Woodbridge securities through each Defendant.

- Count XIII: Claim for Civil Conspiracy Against All Sales Agent Defendants.

- Count VIV: Claim for Vicarious Liability Against Corporate Defendants

Importantly, because a civil conspiracy and a class action are alleged, Plaintiffs have necessarily referenced and incorporate the common allegations of each Defendant's wrongful acts, as well as the misrepresentations and wrongful practices utilized by *all* the Sales Agent Defendants.  For example, at Paragraph 121, the Amended Complaint states that the Non-Resident Sales Agents, "similarly [to the Florida sales agent Defendants], utilized the false and misleading Woodbridge sales script to recommend and sell Woodbridge investments to thousands of . . . investors ….  These Defendants' actions provided Woodbridge with a constant and significant source of investor funds necessary to keep the Ponzi scheme afloat and thus were critical to the success of the Woodbridge scheme and civil conspiracy."

Following the general allegations and the allegations of wrongdoing, Paragraphs 144 through 244 of the Amended Complaint allege that the preceding paragraphs comprise specific causes of action against certain specific Defendants.  Moreover, the only causes of action against the complaining Non-Resident Sales Agents Defendants and Corporate Defendants are those of aiding and abetting breach of fiduciary duty (Count X), civil conspiracy (Count XIII), and vicarious liability allegations against the corporate entities for acts of their respective sales agents (Count XIV).

Recently, in *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 1321 (11th Cir. 2015), the Eleventh Circuit acknowledged that its criticism of shotgun pleadings "has at times been nearly as lacking in precision as the target itself."  To provide clarity, the Eleventh Circuit identified "four rough types or categories of shotgun pleadings," none of which apply to the Amended Complaint.

First, "[t]he most common type … contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Weiland*, 792 F.3d at 1321.   There is no count in the Amended Complaint that "adopts the allegations of all preceding counts" and thus it is not a shotgun pleading of this first category.[6]

Next is "the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  *Id.* at 1321-22.  The Amended Complaint does not suffer from this fault, as there are no rambling, vague, or immaterial allegations.  Instead, the Amended Complaint clearly and methodically moves through its factual allegations, informing both the resident and non-resident Sales Agent Defendants and Corporate Defendants of the wrongful acts and omissions of the Woodbridge and Florida co-conspirators, then alleging that the non-resident Sales Agent Defendants similarly utilized the false and misleading Woodbridge sales script and are, in any event, liable for the tortious acts of their co-conspirators in Florida.

The third type of shotgun pleading does not separate each cause of action into a distinct count.  *Id.* at 1322.  The Amended Complaint does *not* mix causes of action.  Rather, there are three counts of negligence, each alleged against a specific Defendant by the Plaintiff(s) that invested with the specific Defendant.  Likewise, there are three counts of negligent misrepresentation, each separated by specific Plaintiffs as against the specific Defendants with whom they deal.  And there are three counts of breach of fiduciary duty, again, each count being separated by specific Plaintiffs as against the specific Defendants with whom they deal.  There are two Counts of violation of Chapter 517 for the Florida Securities Act by specific Plaintiffs against specific Defendants.  The remaining counts are Aiding and Abetting Breach of Fiduciary Duty,

---

[6]  As the *Weiland* Court observed in the case at bar, "[w]hat we have here is different. The allegations of each count are not rolled into every successive count on down the line."  *Weiland*, 792 F.3d at 1324.

Civil Conspiracy, and Vicarious Liability.  These asserted causes of action are entirely separate, and not "mixed," or somehow intertwined.

The fourth type of shotgun pleading is what he Eleventh Circuit deemed to be the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.  *Id.* at 1323.  As set forth above, the Amended Complaint carefully delineates which Defendant is responsible for certain specific acts or omissions and specifies the Defendants subject to each Count.  Most notably, each Count of the Amended Complaint provides each Defendant with adequate and fair notice of the acts and omissions for which Plaintiffs seek to hold them liable, which is of course the touchstone of a properly plead complaint under Rule 8(a)(2) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

In conclusion, the Amended Complaint gives each Defendant adequate notice of the claims against it and the grounds upon which each claim rests.  Accordingly, the Defendants' shotgun pleadings argument is without merit.

## X.  Plaintiffs Seek Leave to Amend their Claims Against GBH CPAS, P.C.

Defendant GBH CPA, PC ("GBH") has moved to dismiss the Amended Complaint on the grounds that the pleading does not contain a separate cause of action directed to GBH. Plaintiffs' original Complaint [DE 1] asserted a direct claim for negligence against GBH.  *See* Complaint, Count V, ¶¶ 117-122.  Due to a drafting/scrivener error, the cause of action for negligence against GBH was inadvertently omitted from the Amended Complaint.  Plaintiffs intend to seek leave of Court to reassert their negligence claim against GBH in a future pleading after the Court has addressed and resolved the pending motions, and accordingly request that any dismissal of GBH be without prejudice.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an Order denying the various Defendants' Motions to Dismiss.  Alternatively, the Plaintiffs request that if the Court grants any pending Motion in whole or in part, that it be without prejudice.

**Dated:  May 7, 2018**.

By: */s/ Jonathan B. Butler*
Matthew N. Thibaut (FBN 514918)
MThibaut@ciklinlubitz.com
Jonathan B. Butler (FBN 056197)
JButler@ciklinlubitz.com
Jason S. Haselkorn (FBN 052140)
JHaselkorn@ciklinlubitz.com
**CIKLIN LUBITZ & O'CONNELL**
515 North Flagler Drive, 20th Floor
West Palm Beach, FL 33401
T: (561) 832-5900
F: (561) 833-4209
*Co-Counsel for Plaintiffs*

-and-

Joseph G. Galardi (FBN 180572)
galardi@beasleylaw.net
Andrew S. Kwan (FBN 76539)
kwan@beasleylaw.net
**BEASLEY & GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
T: (561) 835-0900
F: (561) 833-4209
*Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was electronically filed with the Clerk

of the Court and served on all parties via CM/ECF, on this 7th day of May, 2018.

*/s/ Joseph G. Galardi*
Joseph G. Galardi